UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHARDON, LLC, *et al.*,[1] | ) | Case No. 13-81372 (TML) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

### AGREED FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL IN WHICH OLD SECOND NATIONAL BANK ASSERTS AN INTEREST AND (II) GRANTING ADEQUATE PROTECTION TO OLD SECOND NATIONAL BANK

This core proceeding initially coming before the Court on the motion (Docket No. 25) (the "Motion")[2] filed by certain of the Debtors and Debtors-in-possession Chardon, LLC, Wolf Business Center, Inc., and Wolf Family Partnership, LLC (collectively referred to herein as the "Old Second Borrowers"), seeking, among other things, authority to use cash collateral of Old Second National Bank ("Old Second" or "Lender"), and granting adequate protection to Lender; due and proper notice of the Motion having been given under the circumstances; no objections to the Motion having been filed; the Court having reviewed the legal and factual bases set forth in the Motion; the Court being fully apprised in the premises; and the parties being in agreement;

The Debtors and Old Second hereby STIPULATE for all purposes in the Debtors' cases, and the Court hereby FINDS:

A.   On April 17, 2013 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Chardon, LLC (8166), Chardon II, LLC (3647), Intervest, LLC (9931), The Rink of Crystal Lake, Inc. (2698), Wolf Business Center, Inc. (0099), Wolf Family Partnership, LLC (6057), Wolf Investments, Inc. (4966), and Wolf Professional Center Corporation (4963).

[2] Capitalized terms not otherwise defined in this Order shall have the meanings set forth in the Motion.

00005848.DOCX V-9

and they continue to operate and manage their businesses, as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1334. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  Prior to the Petition Date, Lender made certain loans and other financial accommodations to the Old Second Borrowers, and in connection therewith entered into certain loan documents, each as described more fully in the Motion and below.

D.  On May 15, 2013 (Docket No. 51), the Court entered an interim order granting the Old Second Borrowers interim use of cash collateral through May 31, 2013 (the "First Interim Cash Collateral Order").

E.  On June 17, 2013 (Docket No. 116), the Court entered an interim order (the "Second Interim Cash Collateral Order") granting the Old Second Borrowers interim use of cash collateral through June 30, 2013.

F.  On July 12, 2013 (Docket No. 173), the Court entered an interim order (the "Third Interim Cash Collateral Order") granting the Old Second Borrowers interim use of cash collateral through August 31, 2013.

G.  On August 28, 2013 (Docket No. 263), the Court entered an interim order (the "Fourth Interim Cash Collateral Order") granting the Old Second Borrowers interim use of cash collateral through September 30, 2013.

H.  On November 7, 2013 (Docket No. 368), the Court granted an interim order (the "Fifth Interim Cash Collateral Order") granting the Old Second Borrowers interim use of cash collateral for the period October and November 2013.

I.  As of the Petition Date, the principal balance of the separate obligations of the Old Second Borrowers to Old Second, and the respective real property (the "Properties") that the Old Second Borrowers have pledged to Old Second to secure such obligations (in addition to all interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), follow:

| Borrower | Approximate Principal Balance | Property |
|---|---|---|
| Wolf Family Partnership, LLC | $139,114.60 | 382 Linn Ave., Crystal Lake (Residential) |
| Chardon, LLC | $1,768,515.78 | 421 N. Northwest Hwy., Barrington (Office) 509 Old Northwest Hwy., Barrington (Office) |
| Wolf Business Center, Inc. | $3,418,247.23 | 10709 Wolf Drive, Huntley (Industrial) |
| Total: | $5,325,877.61 | |

In addition, in the context of a Forbearance Agreement dated December 30, 2010, the Old Second Borrowers have provided to and for the benefit of the Lender, (amended) mortgages ("NGK Liens") on each of the Properties with respect to amounts due and owing to the Lender by NGK International Development ("NGK"), a non-debtor affiliate. As of the Petition Date, the amount due and owing by NGK to the Lender was $155,009.16 ("NGK Obligation"). As a result, as of the Petition Date, the outstanding aggregate claims of the Lender secured by the Properties was $5,480,886.77.

J.  The WFP debt is evidenced and secured by, among other things, each of the following (collectively, the "WFP Documents"): (i) a loan agreement dated March 6, 2006 executed by WFP for the benefit of Old Second, in the amount of $150,000.00, along with the related modification agreements; (ii) that certain Mortgage from WFP to Old Second, dated March 20, 2006; and (iii) that certain Assignment of Rents from WFP to Old Second, dated March 20, 2006.

K.  The CLLC debt is evidenced and secured by, among other things, each of the following (collectively, the "CLLC Documents"): (i) a promissory note dated December 23, 2008, executed by CLLC for the benefit of Old Second, in the amount of $1,003,086.92; (ii) that certain Mortgage from CLLC to Old Second, dated December 23, 2008; (iii) that certain Assignment of Rents from CLLC to Old Second, dated December 23, 2008; (iv) a promissory note dated December 23, 2008, executed by CLLC for the benefit of Old Second, in the amount of $912,970.75; (v) that certain Mortgage from CLLC to Old Second, dated December 23, 2008; and (vi) that certain Assignment of Rents from CLLC to Old Second, dated December 23, 2008.

L.  The WBC debt is evidenced and secured by, among other things, each of the following (collectively, the "WBC Documents"): (i) a promissory note dated December 23, 2008, executed by WBC for the benefit of Old Second, in the amount of $3,543,921.32; (ii) that certain Mortgage and Assignment of Rents from WBC to Old Second, dated December 23, 2008; and (iii) that certain First Amendment to Mortgage from WBC to Old Second, dated December 31, 2010.

M.  The WFP Documents, the CLLC Documents, the WBC Documents and that certain Forbearance Agreement executed as of December 30, 2010 by and among *inter alia* the Old Second Borrowers and Old Second, as each such document may be amended, supplemented, waived and otherwise modified from time to time, and together with all other mortgages, security agreements, collateral assignments, pledges, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, are referred to collectively as the "Prepetition Loan Agreements."

N.  The Old Second Borrowers acknowledge and stipulate that, in accordance with the terms of the Prepetition Loan Agreements, the Old Second Borrowers are truly and justly

indebted to Old Second, without defense, counterclaim or offset of any kind, and that, as of the Petition Date, the Old Second Borrowers were indebted to Old Second in respect to loans made by Old Second to the Old Second Borrowers pursuant to the Prepetition Loan Agreements in the amount of $5,325,877.61 and that the Properties secure claims by Old Second in the amount of $5,480,886.77 (collectively, the "Prepetition Loan Obligations").

O. Without prejudice to the rights of any other party, the Debtors acknowledge and stipulate that under the terms of the Prepetition Loan Agreements, and as security for repayment of the of the Prepetition Loan Obligations, the Old Second Borrowers granted to Old Second security interests in, and liens upon certain of the Old Second Borrowers' assets, as set forth in the Prepetition Loan Agreements, including, without limitation, the Properties, rents and proceeds (collectively, the "Prepetition Collateral"), some of which constitutes "cash collateral" within meaning of section 363(a) of the Bankruptcy Code (collectively, the "Cash Collateral"). Old Second is entitled to adequate protection of its interest in the Prepetition Collateral, including for the use of the Cash Collateral and the continuation of the automatic stay under section 362 of the Bankruptcy Code.

P. In providing for the use of the Cash Collateral, the Debtors and Old Second stipulate that:

> (i) Old Second has no obligation to provide ongoing financing to the Old Second Borrowers or advance to the Old Second Borrowers any amounts that may be available for lending under the Prepetition Loan Agreements; *provided, however,* that Old Second reserves its right to pursue any rights and remedies set forth thereunder against the Old Second Borrowers, except as may be affected, modified, or limited by the Old Second Borrowers' bankruptcy filings;
>
> (ii) to the extent allowed under 11 U.S.C. § 506(b), Old Second may continue to charge to the account of the Old Second Borrowers and to pay in accordance with the Prepetition Loan Agreements all fees, expenses and other costs owing as of the Petition Date and which may arise in the normal course of the Old Second Borrowers' business during the Cases with the Replacement Liens (as defined below) to secure such fees, expenses and other costs;

(iii) the Old Second Borrowers are not aware of and hereby waive any claim, counterclaim, setoff or defense of any kind or nature which would in any way (a) affect the validity, enforceability and non-avoidability of the Prepetition Loan Obligations, the Prepetition Loan Agreements, or any of the liens and security interests held by Old Second under the Prepetition Loan Agreements (collectively, the "Prepetition Liens"), or (b) reduce or affect the obligations of the Old Second Borrowers to pay any of the Prepetition Loan Obligations; and

(iv) the Old Second Borrowers stipulate that (a) the Prepetition Liens are valid, perfected and unavoidable, and (b) as of the Petition Date Old Second has an allowed secured claim in the amount of the Prepetition Loan Obligations; (c) the Properties secure claims by Old Second in the amount of $5,480,886.77; and, (d) Old Second and all of its agents, accountants, officers, attorneys, directors, employees and agents shall be and are hereby released from all claims and causes of action, whether known or unknown, contingent or fixed, liquidated or unliquidated, which claims and causes of action arose prior to the Petition Date.

Q. Notwithstanding the guidelines set forth in Local Bankruptcy Rule 4004-2(A)(2)(b), the Investigation Period set forth herein is reasonable because parties-in-interest have already had a substantial amount of time to investigate the matters addressed herein given that the Motion was originally filed more than six months ago and the Debtors' cases have been pending for more than six months.

R. The Debtors represent that the Motion, to the extent granted herein, is otherwise in the best interests of the Debtors, their estates, their creditors and other parties-in-interest and that Old Second, being the only entity known by the Debtors to assert an interest in the Cash Collateral, other than the Old Second Borrowers themselves, has requested adequate protection and has consented to the relief on the conditions as set forth in this Final Order.

S. Based upon the record presented by the Old Second Borrowers to this Court: (i) the use of the Cash Collateral under the terms provided herein reflects the Old Second Borrowers' exercise of sound business judgment consistent with their fiduciary duties and is supported by reasonably equivalent value and fair consideration; and (ii) the use of Cash

Collateral has been negotiated in good faith and at arms' length between the Old Second Borrowers and Old Second.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted, pursuant to the terms and conditions set forth in this Final Order and any objections thereto that have not previously been withdrawn are overruled. Subject to the rights of parties-in-interest (other than the Debtors) during the Investigation Period described below, this Final Order is valid immediately and fully effective upon its entry.

2. Subject to the terms and conditions of this Final Order, and in accordance with any consented to or approved Budget and any subsequent Monthly Budgets, each as defined below, the Old Second Borrowers may use the Cash Collateral and shall pay their respective ordinary and necessary business expenses until the earlier of (a) entry of a confirmation order concerning the Old Second Borrowers; or (b) an Event of Default, as described below.

3. Pursuant to section 363 of the Bankruptcy Code, the Old Second Borrowers are authorized to use the Cash Collateral only for the purposes set forth in the budget attached hereto as **Exhibit A** (the "Budget") and one or more subsequent Monthly Budgets (defined below), which has been consented to by Old Second, as provided for in this Final Order. The Budget and any Monthly Budgets shall reflect, on a line-item basis, anticipated cash receipts and expenditures with respect to each of the Properties on a monthly basis. The Old Second Borrowers warrant and represent that the Budget and any subsequent Monthly Budget includes all reasonable, necessary, and currently foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of the Properties for the period set forth in the Budget or Monthly Budget. In no event shall the Old Second Borrowers use any Cash Collateral to pay any items except as set forth in the Budget or Monthly Budget, permitted by

this Order in the form of acceptable variances, as approved by the Court after notice to Old Second and a hearing, or as may be consented to in writing by Old Second.

4.      To the extent the Old Second Borrowers seek to modify and extend the Budget, no later than fifteen (15) days prior to expiration of use of Cash Collateral under the Budget, and continuing thereafter with respect to each Monthly Budget, the Old Second Borrowers shall deliver a proposed budget (the "Monthly Budget") to Lender that sets forth all anticipated monthly post-petition revenues and expenses that will be incurred by the Old Second Borrowers during the period of that Monthly Budget. Each Monthly Budget shall be delivered to Lender on or before the 15th day of the month prior to the month for which the Monthly Budget will apply. After receipt of each Monthly Budget, Lender shall have five (5) business days to approve or object to the Monthly Budget. Any such objection by Lender shall be in writing and shall specify the particular item(s) and amount(s) objected to and reasons for the objection. If Lender objects to a Monthly Budget or item or amount therein, unless Old Second Borrowers and Lender agree otherwise, Old Second Borrowers may not make any Cash Collateral expenditure objected to by Lender unless or until Old Second Borrowers obtain the Court's authorization to make such expenditure. Old Second Borrowers may seek authority to make such expenditure on an expedited basis.

5.      Not later than the tenth (10th) day of each month, the Old Second Borrowers shall provide to Old Second variance reports reflecting, on a line-item basis, the actual cash receipts and disbursements for the prior month, the dollar variance and the percentage variance (the "Variance Percent") of such actual receipts and disbursements for the Old Second Borrowers, for each Old Second Borrower and in the aggregate, from those reflected in the Budget for the applicable month. Any disbursement by any of the Old Second Borrowers that are for such

expenses that are not set forth in the Budget or exceed the amount of expenses in the Budget shall constitute an Event of Default under this Final Order unless Old Second consents to such disbursements in writing; *provided, however,* that each of the Old Second Borrowers may make payments in excess of their respective total budgeted disbursements so long as the variance percent of the sum of all actual disbursements for such Old Second Borrower shall not exceed ten (10%) percent of the budgeted disbursements for that month (the "Allowed Variance"); *provided, further,* the Old Second Borrowers, upon prior written consent from the Lender, may pay miscellaneous unanticipated expenses associated with the operations of the Properties that are not included as a category on the prior Monthly Budget so long as such expenses fall within the Allowed Variance. Principal, interest, tax escrow and bank professional fee payments (collectively, the "Adequate Protection Payments"), as provided in the Budget or the Monthly Budget, as applicable, shall be paid to Old Second in full (with no variance) on the weeks that they are budgeted, to the extent that funds are available. If the Adequate Protection Payments in any Budget or Monthly Budget do not include payment of principal, the actual cash balance for each of the Old Second Borrowers, at the end of each such month and at the end of all subsequent months, shall be paid to Old Second as an additional adequate protection payment in an amount not to exceed the aggregate amount of unpaid monthly principal payments of such Old Second Borrower (the "Adequate Protection Transfers"); *provided, however,* under no circumstances shall the Adequate Protection Transfers occur with respect to any Old Second Borrower if such Adequate Protection Transfer causes the beginning monthly cash balance for such Old Second Borrower to be less than $1,000.00.

6.  The Old Second Borrowers shall not use Cash Collateral to make any intercompany loans; *provided, however,* one or more of the Old Second Borrowers may, in the

ordinary course of business and solely in the amounts set forth in one or more Budgets that are reviewed and approved by Old Second, loan funds to one or more of the other Old Second Borrowers and solely to fund expenses related to the Properties, which loans shall be (a) treated as intercompany claims arising after the Petition Date owed by an individual Old Second Borrower to another individual Old Second Borrower and shall be accorded administrative priority status of the kind specified in Sections 503(b) and 507(a) of the Bankruptcy Code; and (b) recorded as appropriate loans and transfers within the Debtors' cash management system so that all transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, the Debtors' books and records; *provided, further*, nothing herein allows for loans or transfers of funds from one or more of the Old Second Borrowers to another Debtor (not an Old Second Borrower) or non-debtor affiliate (not a Old Second Borrower) absent consent from the Lender or further order of the Court.

7. Except as otherwise set forth in this Order, the Old Second Borrowers further agree not to incur any administrative expenses other than those set forth in the Budget or one or more Monthly Budgets without the prior written consent of Old Second or approval by the Court after notice to Old Second and a hearing.

8. In consideration for the Old Second Borrowers' use of the Cash Collateral, the Old Second Borrowers irrevocably waive and shall not assert any surcharge claims (including as a setoff) against Old Second or its Collateral under section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of Old Second.

9. Nothing herein is intended to impair, alter, or prejudice Old Second's rights to financial and other information concerning the business and affairs of the Old Second Borrowers as Old Second shall reasonably request from time to time, including, without limitation, the

corporate, financial and operating reports and information provided to Old Second under the Prepetition Loan Agreements. The Old Second Borrowers will permit Old Second, Old Second's agents and any consultants engaged by Old Second reasonable access, upon notice, to examine the respective corporate, financial and operating records, and make copies thereof, inspect the assets, properties, operations and affairs of the Old Second Borrowers, and visit any or all of the offices of the Old Second Borrowers and will cooperate with Old Second's agents in all such respects. All of the foregoing activities shall be conducted during normal business hours, and in such a manner as to create the least disruption of Old Second Borrowers' operations as is reasonably possible.

10. The Old Second Borrowers shall further provide Old Second with (a) detailed information as to the extent and composition of the Collateral (as defined below) and any collections thereon, upon written request by Old Second; (b) a current rent roll to be updated monthly; and (c) a monthly report of actual revenue and expenditures versus revenue and expenditures as shown in the Budget and subsequent Monthly Budgets.

11. Old Second's obligations under this Final Order are conditioned upon and subject to the delivery to Old Second of evidence satisfactory to Old Second that the Collateral (as defined below) is insured for the full replacement value thereof, Old Second is named as loss payee and/or as additional insured on all insurance policies, and Old Second has requested that each applicable insurer acknowledge continuing coverage notwithstanding the Old Second Borrowers' commencement of the Cases.

12. The Old Second Borrowers are authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to Old Second pursuant to

the terms and conditions of this Final Order, including, without limitation, the Adequate Protection Payments set forth in the Budget and subsequent Monthly Budgets.

13. The Old Second Borrowers shall have, as adequate protection for any diminution in the value of the Prepetition Collateral, and the proceeds thereof, and the Old Second Collateral, and proceeds thereof, valid, perfected and enforceable first-priority security interests (the "Replacement Liens") in and upon the Prepetition Collateral, and the proceeds thereof, and the Old Second Collateral, and proceeds thereof, including, without limitation, all rents, all Properties and all after-acquired property of the estate of the same kind or nature on which the Old Second had valid and perfected liens as of the Petition Date, if any, wherever located, and the proceeds, products, rents, and profits thereof, whether arising from Section 552(b) of the Bankruptcy Code or otherwise (collectively, the "Collateral"). The Replacement Liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off of Old Second existing on the Petition Date; and (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Final Order without any further action by the Debtors or Old Second and without the necessity of the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents.

14. In addition to the Replacement Liens granted to Old Second pursuant to this Final Order, Old Second is hereby granted an administrative claim in the full amount allowable under section 507(b) of the Bankruptcy Code (the "507(b) Claim").

15. Any provision of this Final Order or the Prepetition Loan Agreements to the contrary notwithstanding, the liens and 507(b) Claims granted to Old Second pursuant to the Prepetition Loan Agreements and this Final Order shall be subject and subordinate to a carve out (the "Carve Out") for amounts payable to the United States Trustee pursuant to 28 U.S.C.

§ 1930(a) (the "Trustee Fees"); *provided, however*, the amount of any Carve Out shall be limited to the Trustee Fees incurred by the applicable Old Second Borrower (as a result of disbursements made) relating to the Properties. Notwithstanding anything to the contrary herein, no Collateral may be used to object to or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Prepetition Loan Obligations or the liens securing the Prepetition Loan Obligations, or to prosecute or assert any claims or causes of action against Old Second.

16. Unless Old Second has provided its prior written consent, or upon Order of the Court after notice and a hearing, there shall not be entered in any of the Cases any order which authorizes any of the following: (i) the obtaining of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to the Replacement Liens granted to Old Second herein, unless such credit or issuance of indebtedness provides for payment in full of the Prepetition Loan Obligations and any other obligations of the Debtors to Old Second at the closing of such transaction; or (ii) the enforcement of any claimed security, mortgage, collateral interest or other lien of any person other than Old Second on all or any portion of the Collateral.

17. Old Second shall not be deemed to be in control of the operations of any of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operations or management of any of the Debtors solely by consenting to the Budget and by taking any other actions authorized by this Final Order, or by exercising the rights and remedies as and when permitted pursuant to this Final Order or the Prepetition Loan Agreements.

18. The provisions of this Final Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court, or with the consent of Old Second. Any stay, modification, reversal or vacation of this Final Order shall not affect the validity of any obligation of the Debtors to Old Second incurred pursuant to this Final Order. Notwithstanding any such stay, modification, reversal or vacation, all use of the Old Second Collateral prior to written notice to Old Second of the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and Old Second shall be entitled to all the rights, privileges and benefits, including, without limitation, the Prepetition Liens, the Replacement Liens and 507(b) Claims granted herein.

19. The occurrence of any one or more of the following events, which has not been cured within seven (7) days of written notice from Old Second to the Debtors, shall constitute an event of default (each, an "Event of Default") that shall terminate the Old Second Borrowers' authority to use the Cash Collateral under this Final Order: (a) the violation of any of the terms of this Final Order; (b) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or appointment of any trustee or examiner with expanded powers, without the consent of Old Second; (c) the entry of an order granting any other claim superpriority status or a lien equal or superior to the liens granted to Old Second with respect to the Collateral; (d) the termination, expiration, lapse, or reduction of insurance coverage on any real property owned by any of the Old Second Borrowers and subject to the liens of Old Second for any reason whatsoever; (e) the failure to pay, when due, which such failure has not been cured within any applicable grace period, any real estate taxes on the real property owned by an Old Second Borrower and subject to the liens of Old Second, or any water, sewer, or municipal charges related to the Properties; or (f) an event of default (other than defaults existing on the

Petition Date) occurs under any of the Prepetition Loan Documents as modified by this Final Order.

20.     In consideration for the continued use of the Cash Collateral, each of the Debtors, on behalf of itself and its successors and assigns, shall forever release, discharge and acquit Old Second and its officers, directors, employees, agents, attorneys, and predecessors in interest of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" claims or defenses, which arose on or prior to the date this Final Order is entered with respect to any of the Debtors, the Prepetition Obligations, the Collateral, or the Prepetition Loan Agreements, unless applicable law requires otherwise.

21.     Notwithstanding anything to the contrary set forth in this Final Order, the terms, conditions, and provisions of this Final Order, including, but not limited to, the stipulations contained in the recital paragraphs of this Final Order, shall be binding upon all parties-in-interest, including, without limitation, the Debtors and any statutory committee appointed in the Cases, unless a party-in-interest (other than the Debtors, each of which has completed its investigation and waived its right to challenge the following) has filed an adversary proceeding or contested matter, no later than the date that is forty-five (45) days after the entry of this Final Order (the "Investigation Period"), challenging: (a) the amount, validity, enforceability, perfection or priority of the Prepetition Obligations or Old Second's liens on the Prepetition Collateral in respect thereof; (b) the amount, validity, enforceability, perfection or priority of the NGK Liens; (c) any waivers or releases of claims contained in this Final Order to the benefit of Old Second; or, (d) otherwise asserting any claims or causes of action against Old Second relating to the Prepetition Obligations on behalf of any of the Debtors' estates. If any such

adversary proceeding or contested matter is properly commenced within the Investigation Period, the stipulations contained in the recital paragraphs of this Final Order shall nonetheless remain binding on all parties in interest in these Cases except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter. If no adversary proceeding or contested matter is timely filed before the conclusion of the Investigation Period by any party-in-interest, Old Second, the Prepetition Obligations and the Old Second's liens on the Prepetition Collateral, and any waivers and/or releases set forth herein, shall not be subject to any other or further challenge by any party-in-interest.

22. Entry of this Final Order shall be without prejudice to any and all rights, remedies, claims and causes of action which Old Second may have against any of the Debtors or any third parties, and without prejudice to the right of Old Second to seek relief from the automatic stay in effect pursuant to section 362 of the Bankruptcy Code, Old Second's right to seek additional adequate protection, after notice and a hearing, or any other relief in the Cases.

23. To the extent there exists any conflict between the Prepetition Loan Agreements and this Final Order, this Final Order shall govern.

24. Old Second and the Old Second Borrowers may make modifications or amendments to the Budget or one or more Monthly Budgets, upon written agreement and without further order of this Court.

25. The Old Second Borrowers and their agents are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

26. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date.

**SO ORDERED, ADJUDGED, AND DECREED THIS ___ DAY OF _____, 2013:**

NOV 26 2013

_____
UNITED STATES BANKRUPTCY JUDGE

**AGREED TO AND CONSENTED TO THIS 18TH DAY OF NOVEMBER, 2013:**

| OLD SECOND BORROWERS | OLD SECOND NATIONAL BANK |
|---|---|
| By: /s/ Neal L. Wolf<br>NEAL WOLF & ASSOCIATES, LLC<br>Neal L. Wolf (ARDC No. 6186361)<br>Folarin S. Dosunmu (ARDC No. 6282775)<br>155 N. Wacker Drive, Suite 1910<br>Chicago, IL 60606<br>Tel: (312) 228-4990<br>Fax: (312) 228-4988<br>Email: nwolf@nealwolflaw.com<br>fdosunmu@nealwolflaw.com<br><br>*Proposed Attorneys for the Debtors and Debtors in Possession* | By: /s/ Mark L. Radtke<br>     One of its attorneys<br>Mark L. Radtke (#6275738)<br>Shaw Fishman Glantz & Towbin LLC<br>321 North Clark Street, Suite 800<br>Chicago, Illinois 60654<br>Tel.: (312) 541-0151<br>Fax: (312) 980-3888<br>mradtke@shawfishman.com |

# EXHIBIT A

## December

| | CHARDON<br>421 N. NW Highway<br>(Barrington I) | CHARDON<br>509 Old NW Highway<br>(Barrington II) | WBC<br>10710 Wolf Dr.<br>(WBC II) | WFP<br>382 Linn Ave. | Total |
|---|---|---|---|---|---|
| **Beginning Cash** | $1,000.00 | $394.43 | $1,000.00 | $286.92 | $2,681.35 |
| **Income** | | | | | |
| Rent | $13,271.99 | $10,807.80 | $37,246.37 | $1,200.00 | $62,526.16 |
| Additional Rent | | | $2,000.00 | | $2,000.00 |
| $ Transfers: | | $5,000.00 | ($5,000.00) | $300.00 | $300.00 |
| $ Transfers: | | | | | $0.00 |
| **Expenses** | | | | | $0.00 |
| Utilities | ($1,654.29) | ($1,335.34) | ($1,100.00) | $0.00 | ($4,089.63) |
| Property Repair & Upkeep | ($2,868.00) | ($4,870.00) | ($4,040.00) | $0.00 | ($11,778.00) |
| Cleaning & Sanitation | ($822.48) | ($502.16) | $0.00 | $0.00 | ($1,324.64) |
| Management Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Condo Association Dues | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Insurance | ($959.13) | ($442.00) | ($1,804.00) | ($90.00) | ($3,295.13) |
| Commission Expense | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Tenant Buildout Expenses | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Loan Payments (Old Second) Principal | ($4,599.80) | ($4,400.95) | ($13,760.90) | ($807.37) | ($23,569.02) |
| Loan Payments (Old Second) Interest | ($2,185.65) | ($2,385.64) | ($12,913.00) | ($386.17) | ($17,870.46) |
| Loan Payments (Old Second) Escrow | | | | | $0.00 |
| Loan Payments (Old Second) Additional Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| U.S. Trustee Fees | | | | | $0.00 |
| Professional Fees | ($682.22) | ($1,537.83) | ($350.00) | ($150.00) | ($2,720.05) |
| **Operating Expenses** | ($13,771.57) | ($15,473.92) | ($33,967.90) | ($1,433.54) | ($64,646.93) |
| **Net Operating Income** | $500.42 | ($4,271.69) | $6,278.47 | $53.38 | $2,560.58 |
| Payroll & Admin | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payroll Taxes | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Total Expenses:** | ($13,771.57) | ($15,473.92) | ($33,967.90) | ($1,433.54) | ($64,646.93) |
| **Ending Cash** | $500.42 | $728.31 | $1,278.47 | $353.38 | $2,860.58 |