## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHARDON, LLC, *et al.*,[1] | ) | Case No. 13-81372 (TML) |
| | ) | |
| Debtors. | ) | |
| | ) | |

### ORDER GRANTING FIRST AND FINAL APPLICATION OF NEAL WOLF & ASSOCIATES, LLC AND MUCH SHELIST, P.C., COUNSEL TO THE DEBTORS AND DEBTORS-IN- POSSESSION, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

THIS MATTER coming before the Court on the First and Final Application of Neal Wolf & Associates, LLC ("NW&A") and Much Shelist, P.C. ("Much Shelist"), Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation and Reimbursement of Expenses (the "Application"); the Court having jurisdiction of the parties and of this matter; due and proper notice of the Application having been given to all necessary parties, the Court having considered the Application and the statements of counsel appearing before the Court; and the Court being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Application is hereby granted as set forth herein.

2.      The fees of NW&A for the time period covered by the Application (April 17, 2013 through February 16, 2014) are allowed and approved on a final basis in the amount of $713,002.00 and reimbursement of NW&A's actual and necessary expenses is allowed and approved on a final basis in the amount of $11,863.18.

3.      The fees of Much Shelist for the time period covered by the Application (February 17, 2014 through December 23, 2015) are allowed and approved on a final basis in the amount of $1,116,190.50 and reimbursement of Much Shelist's actual and necessary expenses is allowed and approved on a final basis in the amount of $14,279.94.

4.      NW&A is authorized and directed to pay the balance of $194,558.51 in NW&A's IOLTA's client trust account (the "Trust Account Payment") from the pre-petition retainer as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Corporate Debtor's federal tax identification number, include:  Chardon, LLC (8166), Chardon II, LLC (3647), Intervest, LLC (9931), The Rink of Crystal Lake, Inc. (2698), Wolf Business Center, Inc. (0099), Wolf Family Partnership, LLC (6057), Wolf Investments, Inc. (4966), Wolf Professional Center Corporation (4963) (collectively, the "Corporate Debtors"), Donald Lawrence Wolf, Sr., Donald L. Wolf, Jr. and David M. Wolf (collectively, the "Individual Debtors").

follows: (i) immediate payment of $76,014.01 to NW&A; and (ii) immediate payment of $118,544.50 to Much Shelist.

5.      Within five (5) business days of entry of this Order, the Corporate Debtors are hereby authorized and directed to immediately pay $290,000.00 (the "Cash Payment") as follows: (i) $113,303.00 to NW&A; and (ii) $176,697.00 to Much Shelist.  The Cash Payment shall be made from funds which constitute cash collateral of FirstMerit Bank, N.A.

6.      The Cash Payment shall be made prior to any dismissal of the Debtors' bankruptcy cases.

7.      The Corporate Debtors are hereby authorized and directed to enter into (i) that certain Promissory Note in favor of Much Shelist in the principal amount of $182,790 (the "Much Shelist Promissory Note") attached hereto as Exhibit A; (ii) that certain Promissory Note in favor of NW&A in the principal amount of $117,210 (the "NW&A Promissory Note") attached hereto as Exhibit B; (iii) that certain Mortgage, Assignment of Leases and Rents, And Security Agreement in favor of Much Shelist ("Much Shelist Mortgage") (attached hereto as Exhibit C) relating to the property located at 9239 S. Route 31, Lake in the Hills, Illinois in order to secure the Much Shelist Promissory Note; and (iv) that certain Mortgage, Assignment of Leases and Rents, And Security Agreement in favor of NW&A (the "NW&A Mortgage") (attached hereto as Exhibit D) relating to the property located at 9239 S. Route 31, Lake in the Hills, Illinois in order to secure the NW&A Promissory Note.

8.      NW&A and Much Shelist agree to and shall limit the amount they are paid with respect to the fees and expenses allowed herein or otherwise incurred in the Corporate Debtors' cases to the payment of the Trust Account Payment, the Cash Payment, and the payments called for under the Much Shelist Promissory Note and the NW&A Promissory Note, and to the rights and remedies under the Much Shelist Promissory Note, the NW&A Promissory Note, the NW&A Mortgage and the Much Shelist Mortgage.


Enter:


_____
United States Bankruptcy Judge

6452878_4

**PROMISSORY NOTE**

$182,790.00                                                Date:  March __, 2016
Chicago, Illinois                              Maturity Date: March 1, 2021

1.  AGREEMENT TO PAY.  For value received, Chardon, LLC,, Chardon II, LLC, Intervest, LLC, The Rink of Crystal Lake, Inc., Wolf Business Center, Inc., Wolf Family Partnership, LLC, Wolf Investments, Inc. and Northridge Storage, Inc. (collectively, the "**Borrower**") hereby jointly and severally promise to pay to the order of MUCH SHELIST, P.C., an Illinois professional corporation, its successors and assigns (the "**Lender**"), the principal sum of ONE HUNDRED EIGHTY TWO THOUSAND SEVEN HUNDRED AND NINETY and 00/100 DOLLARS ($182,790.00) (the "**Loan**"), on or before March 1, 2021 (the "**Maturity Date**"), at the place and in the manner hereinafter provided, together with interest thereon at the rate or rates described below, and any and all other amounts which may be due and payable hereunder or under any of the Loan Documents (as hereinafter defined) from time to time.

2.      INTEREST RATE.

        2.1.    Interest Prior to Default.  Interest shall accrue on the outstanding principal balance of this Note from the date hereof through the Maturity Date at a per annum rate of interest equal to five and 00/100 percent (5.00%) (the "**Interest Rate**").

        2.2.    Interest After Default.  From and after the Maturity Date or upon the occurrence and during the continuance of an Event of Default (as hereinafter defined), interest shall accrue on the unpaid principal balance during any such period at an annual rate (the "**Default Rate**") equal to five and 00/100 percent (5.00%) plus the Interest Rate; provided, however, in no event shall the Default Rate exceed the maximum rate permitted by law.  The interest accruing under this section shall be immediately due and payable by the Borrower to the holder of this Note upon demand and shall be additional indebtedness evidenced by this Note.

        2.3.    Interest Calculation.  Interest on this Note shall be calculated on the basis of a 360 day year and the actual number of days elapsed in any portion of a month in which interest is due.  If any payment to be made by the Borrower hereunder shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing any interest in respect of such payment.

3.      PAYMENT TERMS.

        3.1.    Principal and Interest.

        (a)     Quarterly payments of interest only in the amount of $2,284.88 shall be due and payable commencing on June 1, 2016 and on September 1, December 1, and March 1 of each subsequent calendar quarter.  There shall be no payments of principal

due under this Note until the Maturity Date or if sooner declared to be due and owing in accordance with the provisions hereof.

(b)     The unpaid principal balance of this Note, if not sooner paid or declared to be due in accordance with the terms hereof, together with all accrued and unpaid interest thereon and any other amounts due and payable hereunder or under any of the Loan Documents shall be due and payable in full on the Maturity Date.

3.2.    Application of Payments.  Prior to the occurrence of an Event of Default, all payments and prepayments on account of the indebtedness evidenced by this Note shall be applied  as follows: (a) first, to fees, expenses, costs and other similar amounts then due and payable to the Lender, including, without limitation any late charges due hereunder, (b) second, to accrued and unpaid interest on the principal balance of this Note, (c) third, to any other amounts then due the Lender hereunder or under any of the Loan Documents, and (d) last, to the unpaid principal balance of this Note.  Any prepayment on account of the indebtedness evidenced by this Note shall not extend or postpone the due date or reduce the amount of any subsequent monthly payment of principal and interest due hereunder.  After an Event of Default has occurred and is continuing, payments may be applied by the Lender to amounts owed hereunder and under the Loan Documents in such order as the Lender shall determine, in its sole discretion.

3.3.    Method of Payments.  All payments of principal and interest hereunder shall be paid by automatic debit, wire transfer, check or in coin or currency which, at the time or times of payment, is the legal tender for public and private debts in the United States of America and shall be made at such place as the Lender or the legal holder or holders of this Note may from time to time appoint in the payment invoice or otherwise in writing, and in the absence of such appointment, then at the offices of the Lender at 191 North Wacker Drive, Suite 1800, Chicago, Illinois 60606.  Payment made by check shall be deemed paid on the date the Lender receives such check; provided, however, that if such check is subsequently returned to the Lender unpaid due to insufficient funds or otherwise, the payment shall not be deemed to have been made and shall continue to bear interest until collected.

3.4.    Late Charge.  If any payment of interest or principal due hereunder is not made within five days after such payment is due in accordance with the terms hereof, then, in addition to the payment of the amount so due, the Borrower shall pay to the Lender a "**late charge**" of five cents for each whole dollar so overdue to defray part of the cost of collection and handling such late payment.  The Borrower agrees that the damages to be sustained by the holder hereof for the detriment caused by any late payment are extremely difficult and impractical to ascertain, and that the amount of five cents for each one dollar due is a reasonable estimate of such damages, does not constitute interest, and is not a penalty.

3.5.    Principal Prepayments.  This Note may be prepaid, either in whole or in part, without penalty or premium, at any time and from time to time upon five (5) days prior notice to the Lender.

6466571_1

4.    SECURITY.   This Note is secured by that certain:   Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated as of even date herewith, executed by each Borrower to and for the benefit of the Lender (the "**Mortgage**"), creating a mortgage lien on certain real property (the "**Premises**") legally described in Exhibit "A" attached to each Mortgage; (the Mortgages and any and all other documents now or hereafter given to evidence or secure payment of this Note or delivered to induce the Lender to disburse the proceeds of the Loan, as such documents may hereafter be amended, restated or replaced from time to time, are hereinafter collectively referred to as the "**Loan Documents**").   Reference is hereby made to the Loan Documents (which are incorporated herein by reference as fully and with the same effect as if set forth herein at length) for a statement of the covenants and agreements contained therein, a statement of the rights, remedies, and security afforded thereby, and all matters therein contained.

5.    EVENTS OF DEFAULT.   The occurrence of any one or more of the following events shall constitute an "**Event of Default**" under this Note:

(a)    the failure by the Borrower to pay (i) any installment of principal or interest payable pursuant to this Note when due, or (ii) any other amount payable to the Lender under this Note, the Mortgages or any of the other Loan Documents when any such payment is due in accordance with the terms hereof or thereof; or

(b)    the occurrence of any "Event of Default" under either Mortgage or any of the other Loan Documents.

6.    REMEDIES.   At the election of the holder hereof, and without notice, the principal balance remaining unpaid under this Note, and all unpaid interest accrued thereon and any other amounts due hereunder, shall be and become immediately due and payable in full upon the occurrence of any Event of Default.   Failure to exercise this option shall not constitute a waiver of the right to exercise same in the event of any subsequent Event of Default.   No holder hereof shall, by any act of omission or commission, be deemed to waive any of its rights, remedies or powers hereunder or otherwise unless such waiver is in writing and signed by the holder hereof, and then only to the extent specifically set forth therein.   The rights, remedies and powers of the holder hereof, as provided in this Note, the Mortgage and in all of the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against the Borrower, any guarantor hereof, the Premises and any other security given at any time to secure the repayment hereof, all at the sole discretion of the holder hereof.   If any suit or action is instituted or attorneys are employed to collect this Note or any part hereof, the Borrower promises and agrees to pay all costs of collection, including reasonable attorneys' fees and court costs.

7.    COVENANTS AND WAIVERS.   The Borrower and all others who now or may at any time become liable for all or any part of the obligations evidenced hereby, expressly agree hereby to be jointly and severally bound, and jointly and severally: (i) waive and renounce any and all homestead, redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; (ii) waive presentment and demand for payment, notices of nonpayment and of

dishonor, protest of dishonor, and notice of protest; (iii) except as expressly provided in the Loan Documents, waive any and all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default, or enforcement of the payment hereof or hereunder; (iv) waive any and all lack of diligence and delays in the enforcement of the payment hereof; (v) agree that the liability of the Borrower and each guarantor, endorser or obligor shall be unconditional and without regard to the liability of any other person or entity for the payment hereof, and shall not in any manner be affected by any indulgence or forbearance granted or consented to by the Lender to any of them with respect hereto; (vi) consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Lender with respect to the payment or other provisions hereof, and to the release of any security at any time given for the payment hereof, or any part thereof, with or without substitution, and to the release of any person or entity liable for the payment hereof; and (vii) consent to the addition of any and all other makers, endorsers, guarantors, and other obligors for the payment hereof, and to the acceptance of any and all other security for the payment hereof, and agree that the addition of any such makers, endorsers, guarantors or other obligors, or security shall not affect the liability of the Borrower, any guarantor and all others now liable for all or any part of the obligations evidenced hereby.  This provision is a material inducement for the Lender making the Loan to the Borrower.

8.    GENERAL AGREEMENTS.

8.1.    Business Purpose Loan.  The Loan is a business loan which comes within the purview of Section 205/4, paragraph (1)(c) of Chapter 815 of the Illinois Compiled Statutes, as amended.  The Borrower agrees that the Loan evidenced by this Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C., §1601, et seq.

8.2.    Time.  Time is of the essence hereof.

8.3.    Governing Law.  This Note is governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the statutes, laws and decisions of the State of Illinois, without regard to its conflict of laws provisions.

8.4.    Amendments.  This Note may not be changed or amended orally but only by an instrument in writing signed by the party against whom enforcement of the change or amendment is sought.

8.5.    No Joint Venture.  The Lender shall not be construed for any purpose to be a partner, joint venturer, agent or associate of the Borrower or of any lessee, operator, concessionaire or licensee of the Borrower in the conduct of its business, and by the execution of this Note, the Borrower agrees to indemnify, defend, and hold the Lender harmless from and against any and all damages, costs, expenses and liability that may be incurred by the Lender as a result of a claim that the Lender is such partner, joint venturer, agent or associate.

8.6.    Disbursement.  This Note has been made and delivered at Chicago, Illinois and all funds disbursed to or for the benefit of the Borrower will be disbursed in Chicago, Illinois.

4

8.7.    <u>Successor and Assigns</u>.  This Note shall inure to the benefit of and may be enforced by the Lender and its successors and assigns.

8.8.    <u>Severable Loan Provisions</u>.  If any provision of this Note is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, the Borrower and the Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

8.9.    <u>Interest Limitation</u>.  If the interest provisions herein or in any of the Loan Documents shall result, at any time during the Loan, in an effective rate of interest which, for any month, exceeds the limit of usury or other laws applicable to the Loan, all sums in excess of those lawfully collectible as interest of the period in question shall, without further agreement or notice between or by any party hereto, be applied upon principal immediately upon receipt of such monies by the Lender, with the same force and effect as though the payer has specifically designated such extra sums to be so applied to principal and the Lender had agreed to accept such extra payment(s) as a premium-free prepayment. Notwithstanding the foregoing, however, the Lender may at any time and from time to time elect by notice in writing to the Borrower to reduce or limit the collection to such sums which, when added to the said first-stated interest, shall not result in any payments toward principal in accordance with the requirements of the preceding sentence.  In no event shall any agreed to or actual exaction as consideration for this Loan transcend the limits imposed or provided by the law applicable to this transaction or the makers hereof in the jurisdiction in which the Premises are located for the use or detention of money or for forbearance in seeking its collection.

8.10.    <u>Assignability</u>.  The Lender may at any time assign its rights in this Note and the Loan Documents, or any part thereof and transfer its rights in any or all of the collateral, and the Lender thereafter shall be relieved from all liability with respect to such collateral.  In addition, the Lender may at any time sell one or more participations in the Note.  The Borrower may not assign its interest in this Note, or any other agreement with the Lender or any portion thereof, either voluntarily or by operation of law, without the prior written consent of the Lender.

9.    <u>NOTICES</u>.  All notices required under this Note will be in writing and will be transmitted in the manner and to the addresses required by the Mortgage, or to such other addresses as the Lender and the Borrower may specify from time to time in writing.

10.    <u>CONSENT TO JURISDICTION</u>.  TO INDUCE THE LENDER TO ACCEPT THIS NOTE, THE BORROWER IRREVOCABLY AGREES THAT, SUBJECT TO THE LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN CHICAGO, ILLINOIS.   THE BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN CHICAGO, ILLINOIS, WAIVES PERSONAL SERVICE OF PROCESS UPON THE

6466571_1

BORROWER, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO THE BORROWER AT THE ADDRESS STATED IN THE MORTGAGE AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

      11.   WAIVER OF JURY TRIAL.  THE BORROWER AND THE LENDER (BY ACCEPTANCE OF THIS NOTE), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (A) UNDER THIS NOTE OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS NOTE OR (B) ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS NOTE, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.  THE BORROWER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST THE LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

      12.   WAIVER OF DEFENSES.  OTHER THAN CLAIMS BASED UPON THE FAILURE OF THE LENDER TO ACT IN A COMMERCIALLY REASONABLE MANNER, THE BORROWER WAIVES EVERY PRESENT AND FUTURE DEFENSE (OTHER THAN THE DEFENSE OF PAYMENT IN FULL), CAUSE OF ACTION, COUNTERCLAIM OR SETOFF WHICH THE BORROWER MAY NOW HAVE OR HEREAFTER MAY HAVE TO ANY ACTION BY THE LENDER IN ENFORCING THIS NOTE OR ANY OF THE LOAN DOCUMENTS.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER GRANTING ANY FINANCIAL ACCOMMODATION TO THE BORROWER.

      13.   CONFESSION OF JUDGMENT.  Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by Lender setting forth the amount then due, attorneys' fees plus all costs and expenses of suit, and to release all errors, and waive all rights of appeal.  If a copy of this Note, verified by an affidavit, shall have been filed in any such proceeding, it will not be necessary to file the original as a warrant of attorney.  Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.  No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owning on this Note have been paid in full.  Borrower hereby waives and releases any and all claims or causes of action which Borrowers may have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

IN WITNESS WHEREOF, the Borrower has executed and delivered this Promissory Note as of the day and year first above written.

Chardon, LLC

By: _____
    Name:
    Title:

Chardon II, LLC

By: _____
    Name:
    Title:

Intervest, LLC

By: _____
    Name:
    Title:

The Rink of Crystal Lake, Inc.,

By: _____
    Name:
    Title:

Wolf Business Center, Inc.

By: _____
    Name:
    Title:

Wolf Family Partnership, LLC

By: _____
    Name:
    Title

6466571_1

Wolf Investments, Inc.

By: _____
    Name:
    Title:

Northridge Storage, Inc.

By: _____
    Name:
    Title:

6466571_1

# PROMISSORY NOTE

$117,210.00                  Date: March __, 2016
Chicago, Illinois         Maturity Date: March 1, 2021

1.  AGREEMENT TO PAY.  For value received, Chardon, LLC,, Chardon II, LLC, Intervest, LLC, The Rink of Crystal Lake, Inc., Wolf Business Center, Inc., Wolf Family Partnership, LLC, Wolf Investments, Inc. and Northridge Storage, Inc. (collectively, the "**Borrower**") hereby jointly and severally promise to pay to the order of NEAL WOLF & ASSOCIATES LLC, an Illinois limited liability company, its successors and assigns (the "**Lender**"), the principal sum of ONE HUNDRED SEVENTEEN THOUSAND TWO HUNDRED TEN and 00/100 DOLLARS ($117,210.00) (the "**Loan**"), on or before March 1, 2021 (the "**Maturity Date**"), at the place and in the manner hereinafter provided, together with interest thereon at the rate or rates described below, and any and all other amounts which may be due and payable hereunder or under any of the Loan Documents (as hereinafter defined) from time to time.

2.  INTEREST RATE.

     2.1.  Interest Prior to Default.  Interest shall accrue on the outstanding principal balance of this Note from the date hereof through the Maturity Date at a per annum rate of interest equal to five and 00/100 percent (5.00%) (the "**Interest Rate**").

     2.2.  Interest After Default.  From and after the Maturity Date or upon the occurrence and during the continuance of an Event of Default (as hereinafter defined), interest shall accrue on the unpaid principal balance during any such period at an annual rate (the "**Default Rate**") equal to five and 00/100 percent (5.00%) plus the Interest Rate; provided, however, in no event shall the Default Rate exceed the maximum rate permitted by law.  The interest accruing under this section shall be immediately due and payable by the Borrower to the holder of this Note upon demand and shall be additional indebtedness evidenced by this Note.

     2.3.  Interest Calculation.  Interest on this Note shall be calculated on the basis of a 360 day year and the actual number of days elapsed in any portion of a month in which interest is due.  If any payment to be made by the Borrower hereunder shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing any interest in respect of such payment.

3.  PAYMENT TERMS.

     3.1.  Principal and Interest.

        (a)  Quarterly payments of interest only in the amount of $1,465.13 shall be due and payable commencing on June 1, 2016 and on September 1, December 1, and March 1 of each subsequent calendar quarter.  There shall be no payments of principal

due under this Note until the Maturity Date or if sooner declared to be due and owing in accordance with the provisions hereof.

(b)     The unpaid principal balance of this Note, if not sooner paid or declared to be due in accordance with the terms hereof, together with all accrued and unpaid interest thereon and any other amounts due and payable hereunder or under any of the Loan Documents shall be due and payable in full on the Maturity Date.

3.2.   Application of Payments.  Prior to the occurrence of an Event of Default, all payments and prepayments on account of the indebtedness evidenced by this Note shall be applied  as follows: (a) first, to fees, expenses, costs and other similar amounts then due and payable to the Lender, including, without limitation any late charges due hereunder, (b) second, to accrued and unpaid interest on the principal balance of this Note, (c) third, to any other amounts then due the Lender hereunder or under any of the Loan Documents, and (d) last, to the unpaid principal balance of this Note.  Any prepayment on account of the indebtedness evidenced by this Note shall not extend or postpone the due date or reduce the amount of any subsequent monthly payment of principal and interest due hereunder.  After an Event of Default has occurred and is continuing, payments may be applied by the Lender to amounts owed hereunder and under the Loan Documents in such order as the Lender shall determine, in its sole discretion.

3.3.   Method of Payments.  All payments of principal and interest hereunder shall be paid by automatic debit, wire transfer, check or in coin or currency which, at the time or times of payment, is the legal tender for public and private debts in the United States of America and shall be made at such place as the Lender or the legal holder or holders of this Note may from time to time appoint in the payment invoice or otherwise in writing, and in the absence of such appointment, then at the offices of the Lender at 191 North Wacker Drive, Suite 1800, Chicago, Illinois 60606.  Payment made by check shall be deemed paid on the date the Lender receives such check; provided, however, that if such check is subsequently returned to the Lender unpaid due to insufficient funds or otherwise, the payment shall not be deemed to have been made and shall continue to bear interest until collected.

3.4.   Late Charge.  If any payment of interest or principal due hereunder is not made within five days after such payment is due in accordance with the terms hereof, then, in addition to the payment of the amount so due, the Borrower shall pay to the Lender a "**late charge**" of five cents for each whole dollar so overdue to defray part of the cost of collection and handling such late payment.  The Borrower agrees that the damages to be sustained by the holder hereof for the detriment caused by any late payment are extremely difficult and impractical to ascertain, and that the amount of five cents for each one dollar due is a reasonable estimate of such damages, does not constitute interest, and is not a penalty.

3.5.   Principal Prepayments.  This Note may be prepaid, either in whole or in part, without penalty or premium, at any time and from time to time upon five (5) days prior notice to the Lender.

4.     SECURITY.   This Note is secured by that certain:   Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated as of even date herewith, executed by each Borrower to and for the benefit of the Lender (the "**Mortgage**"), creating a mortgage lien on certain real property (the "**Premises**") legally described in Exhibit "A" attached to each Mortgage; (the Mortgages and any and all other documents now or hereafter given to evidence or secure payment of this Note or delivered to induce the Lender to disburse the proceeds of the Loan, as such documents may hereafter be amended, restated or replaced from time to time, are hereinafter collectively referred to as the "**Loan Documents**").   Reference is hereby made to the Loan Documents (which are incorporated herein by reference as fully and with the same effect as if set forth herein at length) for a statement of the covenants and agreements contained therein, a statement of the rights, remedies, and security afforded thereby, and all matters therein contained.

5.     EVENTS OF DEFAULT.   The occurrence of any one or more of the following events shall constitute an "**Event of Default**" under this Note:

(a)     the failure by the Borrower to pay (i) any installment of principal or interest payable pursuant to this Note when due, or (ii) any other amount payable to the Lender under this Note, the Mortgages or any of the other Loan Documents when any such payment is due in accordance with the terms hereof or thereof; or

(b)     the occurrence of any "Event of Default" under either Mortgage or any of the other Loan Documents.

6.     REMEDIES.   At the election of the holder hereof, and without notice, the principal balance remaining unpaid under this Note, and all unpaid interest accrued thereon and any other amounts due hereunder, shall be and become immediately due and payable in full upon the occurrence of any Event of Default.   Failure to exercise this option shall not constitute a waiver of the right to exercise same in the event of any subsequent Event of Default.   No holder hereof shall, by any act of omission or commission, be deemed to waive any of its rights, remedies or powers hereunder or otherwise unless such waiver is in writing and signed by the holder hereof, and then only to the extent specifically set forth therein.   The rights, remedies and powers of the holder hereof, as provided in this Note, the Mortgage and in all of the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against the Borrower, any guarantor hereof, the Premises and any other security given at any time to secure the repayment hereof, all at the sole discretion of the holder hereof.   If any suit or action is instituted or attorneys are employed to collect this Note or any part hereof, the Borrower promises and agrees to pay all costs of collection, including reasonable attorneys' fees and court costs.

7.     COVENANTS AND WAIVERS.   The Borrower and all others who now or may at any time become liable for all or any part of the obligations evidenced hereby, expressly agree hereby to be jointly and severally bound, and jointly and severally:  (i) waive and renounce any and all homestead, redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; (ii) waive presentment and demand for payment, notices of nonpayment and of

dishonor, protest of dishonor, and notice of protest; (iii) except as expressly provided in the Loan Documents, waive any and all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default, or enforcement of the payment hereof or hereunder; (iv) waive any and all lack of diligence and delays in the enforcement of the payment hereof; (v) agree that the liability of the Borrower and each guarantor, endorser or obligor shall be unconditional and without regard to the liability of any other person or entity for the payment hereof, and shall not in any manner be affected by any indulgence or forbearance granted or consented to by the Lender to any of them with respect hereto; (vi) consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Lender with respect to the payment or other provisions hereof, and to the release of any security at any time given for the payment hereof, or any part thereof, with or without substitution, and to the release of any person or entity liable for the payment hereof; and (vii) consent to the addition of any and all other makers, endorsers, guarantors, and other obligors for the payment hereof, and to the acceptance of any and all other security for the payment hereof, and agree that the addition of any such makers, endorsers, guarantors or other obligors, or security shall not affect the liability of the Borrower, any guarantor and all others now liable for all or any part of the obligations evidenced hereby.  This provision is a material inducement for the Lender making the Loan to the Borrower.

8.      GENERAL AGREEMENTS.

8.1.    Business Purpose Loan.  The Loan is a business loan which comes within the purview of Section 205/4, paragraph (1)(c) of Chapter 815 of the Illinois Compiled Statutes, as amended.  The Borrower agrees that the Loan evidenced by this Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C., §1601, et seq.

8.2.    Time.  Time is of the essence hereof.

8.3.    Governing Law.  This Note is governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the statutes, laws and decisions of the State of Illinois, without regard to its conflict of laws provisions.

8.4.    Amendments.  This Note may not be changed or amended orally but only by an instrument in writing signed by the party against whom enforcement of the change or amendment is sought.

8.5.    No Joint Venture.  The Lender shall not be construed for any purpose to be a partner, joint venturer, agent or associate of the Borrower or of any lessee, operator, concessionaire or licensee of the Borrower in the conduct of its business, and by the execution of this Note, the Borrower agrees to indemnify, defend, and hold the Lender harmless from and against any and all damages, costs, expenses and liability that may be incurred by the Lender as a result of a claim that the Lender is such partner, joint venturer, agent or associate.

8.6.    Disbursement.  This Note has been made and delivered at Chicago, Illinois and all funds disbursed to or for the benefit of the Borrower will be disbursed in Chicago, Illinois.

8.7.   Successor and Assigns.  This Note shall inure to the benefit of and may be enforced by the Lender and its successors and assigns.

8.8.   Severable Loan Provisions.  If any provision of this Note is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, the Borrower and the Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

8.9.   Interest Limitation.  If the interest provisions herein or in any of the Loan Documents shall result, at any time during the Loan, in an effective rate of interest which, for any month, exceeds the limit of usury or other laws applicable to the Loan, all sums in excess of those lawfully collectible as interest of the period in question shall, without further agreement or notice between or by any party hereto, be applied upon principal immediately upon receipt of such monies by the Lender, with the same force and effect as though the payer has specifically designated such extra sums to be so applied to principal and the Lender had agreed to accept such extra payment(s) as a premium-free prepayment.  Notwithstanding the foregoing, however, the Lender may at any time and from time to time elect by notice in writing to the Borrower to reduce or limit the collection to such sums which, when added to the said first-stated interest, shall not result in any payments toward principal in accordance with the requirements of the preceding sentence.  In no event shall any agreed to or actual exaction as consideration for this Loan transcend the limits imposed or provided by the law applicable to this transaction or the makers hereof in the jurisdiction in which the Premises are located for the use or detention of money or for forbearance in seeking its collection.

8.10.   Assignability.  The Lender may at any time assign its rights in this Note and the Loan Documents, or any part thereof and transfer its rights in any or all of the collateral, and the Lender thereafter shall be relieved from all liability with respect to such collateral.  In addition, the Lender may at any time sell one or more participations in the Note.  The Borrower may not assign its interest in this Note, or any other agreement with the Lender or any portion thereof, either voluntarily or by operation of law, without the prior written consent of the Lender.

9.   NOTICES.  All notices required under this Note will be in writing and will be transmitted in the manner and to the addresses required by the Mortgage, or to such other addresses as the Lender and the Borrower may specify from time to time in writing.

10.   CONSENT TO JURISDICTION.  TO INDUCE THE LENDER TO ACCEPT THIS NOTE, THE BORROWER IRREVOCABLY AGREES THAT, SUBJECT TO THE LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN CHICAGO, ILLINOIS.   THE BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN CHICAGO, ILLINOIS, WAIVES PERSONAL SERVICE OF PROCESS UPON THE

6466633_1

BORROWER, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO THE BORROWER AT THE ADDRESS STATED IN THE MORTGAGE AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

      11.   <u>WAIVER OF JURY TRIAL</u>.  THE BORROWER AND THE LENDER (BY ACCEPTANCE OF THIS NOTE), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (A) UNDER THIS NOTE OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS NOTE OR (B) ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS NOTE, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.  THE BORROWER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST THE LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

      12.   <u>WAIVER OF DEFENSES</u>.  OTHER THAN CLAIMS BASED UPON THE FAILURE OF THE LENDER TO ACT IN A COMMERCIALLY REASONABLE MANNER, THE BORROWER WAIVES EVERY PRESENT AND FUTURE DEFENSE (OTHER THAN THE DEFENSE OF PAYMENT IN FULL), CAUSE OF ACTION, COUNTERCLAIM OR SETOFF WHICH THE BORROWER MAY NOW HAVE OR HEREAFTER MAY HAVE TO ANY ACTION BY THE LENDER IN ENFORCING THIS NOTE OR ANY OF THE LOAN DOCUMENTS.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER GRANTING ANY FINANCIAL ACCOMMODATION TO THE BORROWER.

      13.   <u>CONFESSION OF JUDGMENT</u>.  Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by Lender setting forth the amount then due, attorneys' fees plus all costs and expenses of suit, and to release all errors, and waive all rights of appeal.  If a copy of this Note, verified by an affidavit, shall have been filed in any such proceeding, it will not be necessary to file the original as a warrant of attorney.  Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.  No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owning on this Note have been paid in full.  Borrower hereby waives and releases any and all claims or causes of action which Borrowers may have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

6466633_1

IN WITNESS WHEREOF, the Borrower has executed and delivered this Promissory Note as of the day and year first above written.

Chardon, LLC

By: _____
    Name:
    Title:

Chardon II, LLC

By: _____
    Name:
    Title:

Intervest, LLC

By: _____
    Name:
    Title:

The Rink of Crystal Lake, Inc.,

By: _____
    Name:
    Title:

Wolf Business Center, Inc.

By: _____
    Name:
    Title:

Wolf Family Partnership, LLC

By: _____
    Name:
    Title

6466633_1

Wolf Investments, Inc.

By:  _____
     Name:
     Title:

Northridge Storage, Inc.

By:  _____
     Name:
     Title:

6466633_1

(North Ridge Storage)

**THIS INSTRUMENT PREPARED
BY AND RETURN TO:**

Much Shelist, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Attn: Harold S. Dembo, Esq.

## MORTGAGE, ASSIGNMENT OF LEASES
## AND RENTS, AND SECURITY AGREEMENT

**THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT** is made as of the ___ day of March, 2016, between **NORTHRIDGE STORAGE, INC.,** an Illinois corporation with a mailing address of 44 N. Virginia, Suite A, Crystal Lake, Illinois 60014 (hereinafter referred to as "Mortgagor") and **NEAL WOLF & ASSOCIATES, LLC,** an Illinois limited liability company, having its principal office at 25317 N. Countryside Drive, Lake Barrington, Illinois 60010 ("Lender").

**WHEREAS,** Mortgagor and Chardon, LLC,, Chardon II, LLC, Intervest, LLC, The Rink of Crystal Lake, Inc., Wolf Business Center, Inc., Wolf Family Partnership, LLC, Wolf Investments, Inc. (collectively "Co-Borrower") are indebted to Lender in the principal sum of **ONE HUNDRED SEVENTEEN THOUSAND TWO HUNDRED TEN and 00/100 DOLLARS ($117,210.00),** which indebtedness is evidenced by that certain Promissory Note of even date herewith, wherein Mortgagor and Co-Borrower promise to pay to the order of Lender the maximum principal amount of **ONE HUNDRED SEVENTEEN THOUSAND TWO HUNDRED TEN and 00/100 DOLLARS ($117,210.00)** ("Note") providing for repayment of principal and interest with interest being paid at a fixed rate and providing for a final payment of all sums due thereunder on **March 1, 2021.**

**TO SECURE** to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all charges provided herein and all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements contained herein and in the Note, all future advances and all other indebtedness of Mortgagor to Lender whether now or hereafter existing (collectively, the "Secured Indebtedness") and also in consideration of Ten Dollars ($10.00), the receipt and sufficiency whereof is acknowledged, Mortgagor does hereby convey, grant, mortgage and warrant to Lender the real estate ("Real Estate") located in the County of McHenry, State of Illinois and described on **Exhibit "A"** attached hereto;

**TOGETHER WITH** all buildings, structures, improvements, tenements, fixtures, easements, mineral, oil and gas rights, water rights, appurtenances thereunto belonging, title or reversion in any parcels, strips, streets and alleys adjoining the Real Estate, any land or vaults lying within any street, thoroughfare, or alley adjoining the Real Estate, and any privileges, licenses, and

franchises pertaining thereunto, all of the foregoing now or hereafter acquired, all leasehold estates and all rents, issues, and profits thereof, for so long and during all such times as Mortgagor, its successors and assigns may be entitled thereto, all the estate, interest, right, title or other claim or demand which Mortgagor now has or may hereafter have or acquire with respect to (i): proceeds of insurance in effect with respect to the Property (as hereinafter defined) and (ii) any and all awards, claims for damages, settlements and other compensation made for or consequent upon the taking by condemnation, eminent domain or any like proceeding, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Property, including, without limitation, any awards and compensation resulting from a change of grade of streets and awards and compensation for severance damages (collectively "Awards") (which are pledged primarily and on a parity with the Real Estate and not secondarily), and all apparatus, equipment or articles now or hereafter located thereon used to supply heat, gas, air conditioning, water, light, power, refrigeration (whether single units or centrally controlled), and ventilation, and any other apparatus, equipment or articles used or useful in the operation of the property including all additions, substitutions and replacements thereof. All of the foregoing are declared to be a part of the Real Estate whether physically attached or not, and it is agreed that all similar apparatus, equipment, articles and fixtures hereafter placed on the Real Estate by Mortgagor or its successors or assigns shall be considered as constituting part of the Real Estate. (All of the foregoing, together with the Real Estate (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property").

To have and to hold the Property unto the Lender, its successors and assigns forever, for the purposes and uses set forth herein, free from all rights and benefits under any Homestead Exemption laws of the state in which the Property is located, which rights and benefits Mortgagor does hereby expressly release and waive.

Mortgagor and Lender covenant and agree as follows:

1.    **Payment of Principal and Interest**. Mortgagor shall promptly pay or cause to be paid when due all Secured Indebtedness.

2.    **Taxes and Assessments**. Mortgagor shall pay or cause to be paid when due all real estate taxes and assessments attributable to the Property. Mortgagor shall provide evidence reasonably satisfactory to Lender of compliance with these requirements if requested by Lender.

3.    **Application of Payments**. Unless prohibited by applicable law, all payments received by Lender under this Mortgage, the Note and all other documents given to Lender to further evidence, secure or guarantee the Secured Indebtedness (collectively, the "Loan Documents") shall be applied by Lender first to payments required from Mortgagor to Lender under Paragraph 2, then to any sums advanced by Lender pursuant to Paragraph 8 to protect the security of this Mortgage, then to interest payable on the Note and to any prepayment premium which may be due, and then to principal payable on the Note (and if principal is due in installments, application shall be to such installments in the inverse order of their maturity).

Any applications to principal of proceeds from insurance policies, as provided in Paragraph 6, or of condemnation awards, as provided in Paragraph 10, shall not extend or postpone the due

date of any monthly installments of principal or interest, or change the amount of such installments or of the other charges or payments provided in the Note or other Loan Documents.

4.     **Prior Encumbrances; Liens**.   Mortgagor shall perform all of Mortgagor's obligations under any mortgage, deed of trust or other security agreement (collectively "Prior Encumbrances") creating a lien having priority over this Mortgage, including Mortgagor's covenants to make payments when due.  Any act or omission of Mortgagor which, with the giving of notice or the passage of time would constitute a default or event of default under any Prior Encumbrance or under any ground lease shall be an Event of Default under this Mortgage. Mortgagor shall promptly deliver to Lender all notices given or received of any defaults or events of default under any Prior Encumbrance or any ground lease.  Nothing in this Paragraph shall be deemed to permit a Prohibited Transfer as defined in Paragraph 17 hereof.

Mortgagor shall keep the Property free from mechanics' and all other liens and encumbrances, except Permitted Encumbrances and statutory liens for real estate taxes and assessments not yet due and payable.

5.     **Taxes and Assessments; Rents**.  Mortgagor shall pay or cause to be paid when due all Impositions and water, sewer and other charges, fines and Impositions attributable to the Property and leasehold payments, if any, and all other sums due under any ground lease attributable to the Property.  Mortgagor shall provide evidence satisfactory to Lender of compliance with these requirements promptly after the respective due dates for payment. Mortgagor shall pay, in full, but under protest in the manner provided by statute, any tax or assessment Mortgagor desires to contest.

6.     **Insurance**.  Mortgagor, at its sole cost and expense, shall keep insured the Property with all-risk insurance against loss to the Property, if applicable, and general public liability insurance against death, bodily injury and property damage arising in connection with the Property. The all-risk and general public liability insurance shall name Lender as a mortgagee-loss payee and shall be in amount not less than the fair market value of the Property. The insurance shall be evidenced by certificates of insurance.

7.     **Use, Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments**.  Mortgagor shall not commit waste or permit impairment or deterioration of the Property.  Mortgagor shall not allow store, treat or dispose of hazardous material, nor permit the same to exist or be stored, treated or disposed of, from or upon the Property. Mortgagor shall promptly restore or rebuild any buildings or improvements now or hereafter on the Property which may become damaged or destroyed.  Mortgagor shall comply with all requirements of law or municipal ordinances with respect to the use, operation, and maintenance of the Property, including all environmental, health and safety laws and regulations, and shall make no material alterations in the Property, except as required by law, without the prior written consent of Lender. If this Mortgage is on a unit in a condominium or a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.  If this Mortgage is on a ground leasehold, Mortgagor shall perform or cause to be performed all obligations of the lessee under the underlying ground lease.

3

6466647_2

8.  **Protection of Lender's Security**.  If Mortgagor fails to perform any of the covenants and agreements contained in this Mortgage, the Note or the other Loan Documents, or if any action or proceeding is threatened or commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon not less than thirty (30) days notice to Mortgagor, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as it deems expedient or necessary to protect Lender's interest, including: (i) making repairs; (ii) discharging Prior Encumbrances in full or part; (iii) paying, settling, or discharging tax liens, mechanics' or other liens, paying ground rents (if any); (iv) procuring insurance; and (v) renting, operating and managing the Property and paying operating costs and expenses, including management fees, of every kind and nature in connection therewith, so that the Property shall be operational and usable for its intended purposes.  Lender, in making such payments of Impositions and assessments, may do so in accordance with any bill, statement, or estimate procured from the appropriate public office without inquiry into the accuracy of same or into the validity thereof.

Any amounts disbursed by Lender pursuant to this Paragraph 8 shall be part of the Secured Indebtedness and shall bear interest at the default interest rate provided in the Note (the "Default Rate").  Nothing contained in this Paragraph 8 shall require Lender to incur any expense or take any action hereunder, and inaction by Lender shall never be considered a waiver of any right accruing to Lender on account of this Paragraph 8.

9.  **Inspection of Property and Books and Records**.  Mortgagor shall permit Lender and its representatives and agents to inspect the Property from time to time during normal business hours and as frequently as Lender requests.  Mortgagor shall keep and maintain full and correct books and records showing in detail the income and expenses of the Property.  From time to time upon not less than five (5) days' demand, Mortgagor shall permit Lender or its agents to examine and copy such books and records and all supporting vouchers and data at its offices or at the address identified above.

10.  **Condemnation**.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid directly to Lender. Mortgagor hereby grants a security interest to Lender in and to such proceeds.  Lender is authorized to collect such proceeds and to apply said proceeds in payment of the Secured Indebtedness. In the event the Property is restored, Lender may pay the condemnation proceeds in accordance with its customary loan payment procedures, and may charge its customary fee for such services.  In the event the condemnation proceeds are applied to reduce the Secured Indebtedness, any such application shall constitute a prepayment, and any prepayment premium required by the Loan Documents shall then be due and payable as provided therein.  Lender may apply the condemnation proceeds to such prepayment premium.

11.  **Mortgagor Not Released; Forbearance by Lender Not a Waiver; Remedies Cumulative**.  Extension or other modification granted by Lender to any successor in interest of Mortgagor of the time for payment of all or any part of the Secured Indebtedness shall not operate to release, in any manner, the liability of the Mortgagor.  Any forbearance or inaction by Lender in

exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. Any acts performed by Lender to protect the security of this Mortgage, as authorized by Paragraph 8 or otherwise, shall not be a waiver of Lender's right to accelerate the maturity of the Secured Indebtedness. All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively. No consent or waiver by Lender to or of any breach or default by Mortgagor shall be deemed a consent or waiver to or of any other breach or default.

12.     **Successors and Assigns Bound; Joint and Several Liability; Co-signers**. The covenants and agreements contained herein shall bind, and the rights hereunder shall inure to, the respective heirs, executors, legal representatives, successors and assigns of Lender and Mortgagor. If this Mortgage is executed by more than one Mortgagor, each Mortgagor shall be jointly and severally liable hereunder.

13.     **Loan Charges**. If the Loan (as hereinafter defined) secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Mortgagor which exceeded permitted limits ("Excess Loan Charges") will, at Lender's option, either be refunded to Mortgagor or applied as a credit against the then outstanding principal balance or accrued and unpaid interest thereon. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note. Neither Mortgagor nor any other guarantor or obligor of the Note shall have any action against Lender for any damages whatsoever arising from the payment of Excess Loan Charges.

14.     **Legislation Affecting Lenders' Rights**. If an enactment, modification or expiration of an applicable governmental law, ruling or regulation has the effect of rendering any provision of the Note, this Mortgage or any of the other Loan Documents unenforceable according to its terms, Lender, at its option upon giving written notice to Mortgagor allowing Mortgagor sixty (60) days to pay off the balance of the Loan, may require immediate payment in full of all sums secured by this Mortgage and may invoke any remedies permitted by Paragraph 19.

15.     **Notice**. Except for any notice required under applicable law to be given in another manner, any notices required or given under this Mortgage shall be given by hand delivery, by nationally recognized overnight courier service or by certified mail, return receipt requested. Notices to Mortgagor are to be directed to the attention of Donald Wolf, Jr., 44 N. Virginia, Suite A, Crystal Lake, IL 60014. Notices to Lender are to be directed to the attention of Neal Wolf, Esq., Neal Wolf & Associates, LLC, 25317 N. Countryside Drive, Lake Barrington, IL 60010. Notices shall be deemed to have been given and effective on the date of delivery if hand-delivered, the next business day after delivery to the nationally recognized overnight courier service if by such courier service, or two (2) business days after the date of mailing shown on the certified receipt, if mailed. Any party hereto may change the address to which notices are given by notice as provided herein.

6466647_2

16.  **Governing Law; Severability**. The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage, the Note or any of the other Loan Documents conflicts with applicable law, or is adjudicated to be invalid or unenforceable same shall not affect other provisions of this Mortgage, the Note or any of the other Loan Documents which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage, the Note or any of the other Loan Documents are declared to be severable and the validity or enforceability of the remainder of the Loan Document in question shall be construed without reference to the conflicting, invalid or unenforceable clause or provision.

17.  **Prohibitions on Transfer of the Property or of an Interest in Mortgagor**. It shall be an immediate default if, without the prior written consent of Lender, which consent shall not be unreasonably withheld, Mortgagor shall create, effect or consent to or shall suffer or permit any conveyance, sale (including an installment sale), assignment, transfer, lien, pledge, hypothecate, mortgage, security interest, or other encumbrance or alienation, whether by operation of law, voluntarily or otherwise, (collectively "Transfer") of the Property or any part thereof or interest therein, (each of the foregoing is referred to as a "Prohibited Transfer") except for that certain Mortgage, Assignment of Leases and Rents, And Security Agreement in favor of Much Shelist, PC of even date herewith. In the event of such default, Lender may declare the entire unpaid balance, including interest, immediately due and payable. The foregoing provisions of this Paragraph 17 shall not, however, apply to the lien of current Impositions and assessments not yet due and payable or to the lien of any current or future senior loan and senior mortgage. This option shall not be exercised by Lender if prohibited by Federal law as of the date of this Mortgage.

18.  **Event of Default**. Each of the following shall constitute an event of default ("Event of Default") under this Mortgage:

(a)  Mortgagor's failure to pay any installment of principal or interest when due and payable, whether at maturity or by acceleration or otherwise under the Note, this Mortgage, or any other Loan Document, or Mortgagor's failure to pay any other amount required under the Note, this Mortgage or any other Loan Document;

(b)  Mortgagor's failure to perform or observe any other covenant, agreement, representation, warranty or other provision contained in the Note, this Mortgage (other than an Event of Default described elsewhere in this Paragraph 18) or any other document or instrument evidencing, guarantying or securing the Secured Indebtedness, and such failure continues for more than thirty (30) days after the earlier of Mortgagor becoming aware of such failure and notice thereof given by Lender to Mortgagor; provided, however, that if such Event of Default is not capable of being cured within said thirty (30) days, Mortgagor commences to cure such Event of Default within said thirty (30) days and thereafter Mortgagor diligently prosecutes the cure of such Event of Default, Mortgagor shall have such additional time as is reasonably necessary, not to exceed sixty (60) days, to cure such Event of Default; provided, however, that such cure period shall not apply to the other subparagraphs of this Paragraph 18;

(c)     the occurrence of any material breach of any representation or warranty contained in this Mortgage or any other Loan Document;

(d)     the occurrence of a Prohibited Transfer;

(e)     the entry by a court having jurisdiction of a decree or order for relief in respect of Mortgagor in any involuntary case brought under any bankruptcy, insolvency, debtor relief, or similar law; or if Mortgagor, or any person in control of Mortgagor, shall: (i) file a voluntary petition in bankruptcy, insolvency, debtor relief or for arrangement, reorganization or other relief under the Federal Bankruptcy Act or any similar state or federal law; (ii) consent to or suffer the appointment of or taking possession by a receiver, liquidator, or trustee (or similar official) of the Mortgagor or for any part of the Property or any substantial part of the Mortgagor's other property; (iii) make any assignment for the benefit of Mortgagor's creditors;

(f)     all or a substantial part of Mortgagor's assets are attached, seized, subjected to a writ or distress warrant, or are levied upon;

(g)     this Mortgage shall not constitute a valid lien on and security interest in the Property (subject only to the Permitted Encumbrances), or if such lien and security interest shall not be perfected;

(j)     an indictment or other charge is filed against Mortgagor, any guarantor of or obligor under the Note in any jurisdiction, under any federal or state law, for which forfeiture of the Premises or of other collateral securing the Secured Indebtedness is determined by Lender in its reasonable discretion, to be a potential penalty unless such charge is dismissed within sixty (60) days after filing; or

(k)     a default shall occur under that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated even date herewith made by Co-Borrower in favor of Lender.

19.     **ACCELERATION; REMEDIES**.  AT ANY TIME AFTER AN EVENT OF DEFAULT, LENDER, AT LENDER'S OPTION, MAY DECLARE ALL SUMS SECURED BY THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS TO BE IMMEDIATELY DUE AND PAYABLE WITHOUT FURTHER DEMAND AND MAY FORECLOSE THIS MORTGAGE BY JUDICIAL PROCEEDING. LENDER SHALL BE ENTITLED TO COLLECT IN SUCH PROCEEDING ALL EXPENSES OF FORECLOSURE, INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES AND COSTS INCLUDING ABSTRACTS AND TITLE REPORTS, ALL OF WHICH SHALL BECOME A PART OF THE SECURED INDEBTEDNESS AND IMMEDIATELY DUE AND PAYABLE, WITH INTEREST AT THE DEFAULT RATE.  THE PROCEEDS OF ANY FORECLOSURE SALE OF THE PROPERTY SHALL BE APPLIED AS FOLLOWS:  FIRST, TO ALL COSTS, EXPENSES AND FEES INCIDENT TO THE FORECLOSURE PROCEEDINGS; SECOND, AS SET FORTH IN PARAGRAPH 3 OF THIS MORTGAGE; AND THIRD, ANY BALANCE TO MORTGAGOR.

6466647_2

20.   **Assignment of Leases and Rents**.  All right, title, and interest of Mortgagor in and to those all present and future leases affecting the Property, written or oral (collectively, "Leases"), and all rents, income, receipts, revenues, issues, avails and profits from or arising out of the Property (collectively "Rents") are hereby transferred and assigned to Lender as further security for the payment of the Secured Indebtedness, and Mortgagor hereby grants a security interest to Lender in and to the same.  Each Lease shall, at the option of Lender, be paramount or subordinate to this Mortgage.

If, without Lender's prior written consent, Mortgagor;  (i) as lessor, fails to perform and fulfill any term, covenant, or provision in any Lease; (ii) suffers or permits to occur any breach or default under the provisions of any separate assignment of any Lease given as additional security for the Secured Indebtedness; or (iii) fails to fully protect, insure, preserve, and cause continued performance or fulfillment of the terms, covenants, or provisions, which are required to be performed by the lessee or the lessor of any other Lease or Leases hereafter assigned to Lender; such occurrence shall constitute an Event of Default hereunder.

Lender shall have the right to assign Mortgagor's right, title and interest in any Leases to any subsequent holder of this Mortgage or the Note and other Loan Documents or to any person acquiring title to all or any part of the Premises through foreclosure or otherwise.

Upon an Event of Default, this Mortgage shall constitute a direction to each lessee under the Leases and each guarantor thereof, if any, to pay all Rents directly to Lender, to the extent allowed by law, without proof of the Event of Default.  While this assignment is a present assignment, Lender shall not exercise any of the rights or powers conferred upon it by this paragraph until an Event of Default shall occur under this Mortgage.  In the event Lender is prohibited or precluded from collecting the Rents upon an Event of Default, Mortgagor hereby agrees to remit to Lender all Rents collected by Mortgagor following such Event of Default, which amounts shall be applied to the Secured Indebtedness or to the operation and maintenance of the Premises, in Lender's reasonable discretion.

If Mortgagor, as lessor, shall neglect or refuse to perform and keep all of the covenants and agreements contained in the Lease or Leases, then Lender may perform and comply with any such Lease covenants and agreements.  All related costs and expenses incurred by the Lender shall become a part of the Secured Indebtedness and shall be due and payable upon demand by Lender with interest thereon accruing thereafter at the Default Rate.

Lender, however, shall not be obligated to perform or discharge any obligation, duty or liability under any Lease.  Mortgagor shall, defend, protect, indemnify and hold Lender harmless from and against any and all liability, loss or damage to Lender under the Leases or under or by reason of their assignments and of and from any and all claims and demands whatsoever which may be asserted against Lender by reason of all alleged obligations or undertakings on its part to perform or discharge any Lease terms, covenants or agreements.  The amount of any such liability, loss or damage arising under the Leases or under or by reason of their assignment, or in the defense of any claims or demands, including costs, expenses and attorneys' fees, incurred by Lender shall be a part of the Secured Indebtedness due and payable upon demand with interest thereon accruing thereafter at the Default Rate.

21.    Intentionally Omitted.

22.    **Appointment of Receiver**.   Upon acceleration under Paragraphs 17 or 19 or abandonment of the Property, and without further notice to Mortgagor, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the Rents including those past due.  The receiver shall have the power to collect the Rents from the time of acceleration through the pendency of any foreclosure proceeding and during the full statutory period of redemption, if any.  All Rents collected by the receiver shall be applied as the appointing court may direct and, in the absence of such direction, first to payment of the costs and expenses of the management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then as provided in Paragraph 3.  The receiver shall be liable to account only for those Rents actually received.

23.    **Release**.  Upon payment of all Secured Indebtedness, Lender shall release this Mortgage upon payment by Mortgagor of all costs and fees to release same, if any. Mortgagor shall be responsible for recording the release, including all related costs of recordation.

24.    **Security Agreement**.  Without limiting any other provisions of this Mortgage, this Mortgage constitutes a Security Agreement under the Uniform Commercial Code of the State of Illinois (herein called the "Code") with respect to all fixtures, apparatus, equipment or articles, and all replacements and substitutions, now or hereafter located on the Property as set forth in the description of the Property above, including but not limited to the air-conditioning, heating, gas, water, power, light, refrigeration, and ventilation systems which are presently located at the Property, and with respect to all Funds and other sums which may be deposited with Lender pursuant hereto (all for the purposes of this paragraph called "Collateral"), and Mortgagor hereby grants to Lender a security interest in such Collateral.  All of the terms, provisions, conditions and agreements contained in this Mortgage pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Property.  When the Secured Indebtedness shall become due, whether by acceleration or otherwise, Lender shall have all remedies of a secured party under the Code.  This Mortgage is intended to be a financing statement with respect to any other Collateral which constitutes "fixtures" within the meaning of the Code.  Mortgagor shall execute and deliver to Lender any financing statements necessary to perfect the security interest in the Collateral created hereby.  Any Code requirement for reasonable notice shall be met if such notice is delivered as provided herein at least five (5) days prior to the time of any sale, disposition, or other event or matter giving rise to the notice (which period of time and method of notice is agreed to be commercially reasonable).

25.    **Principal Amount of Mortgage**.  At no time shall the principal amount of the Note secured by this Mortgage, not including sums advanced for Impositions and insurance premiums or to protect the security of this Mortgage, exceed two hundred percent (200%) of the stated principal amount of the Note.

26.    **Business Loan**.  Mortgagor hereby represents and warrants that: (a) the proceeds of the Secured Indebtedness (the "Loan") will be used for the purposes specified in 815 ILCS

205/4(1)(a) or (c) of the Illinois Compiled Statutes, as amended; (b) the Loan constitutes a "business loan" within the purview of that Section; (c) the Loan is a transaction exempt from the Truth in Lending Act, 15 U.S.C. ' 1601, et seq.; and (d) the proceeds of the Secured Indebtedness will not be used for the purchase of registered equity securities within the purview of Regulation "U" issued by the Board of Governors of the Federal Reserve System.

27.    **Riders**. All Riders attached hereto, if any, are incorporated herein and made a part hereof.

28.    **Compliance with Illinois Mortgage Foreclosure Law**. If any provision in this Mortgage shall be inconsistent with any provision of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 et. seq. of the Illinois Compiled Statutes) (the "Act") the provisions of the Act shall take precedence over the Mortgage provisions, but shall not invalidate or render unenforceable any other Mortgage provision that can be construed in a manner consistent with the Act. If any Mortgage provision shall grant to Lender any rights or remedies upon Mortgagor's default which are more limited than the rights that would otherwise be vested in Lender under the Act in the absence of such provision, Lender shall be vested with the rights granted in the Act to the full extent permitted by law. Without limiting the generality of the foregoing, all expenses incurred by Lender to the extent reimbursable under Sections 15-1510 and 15-1512 of the Act, whether incurred before or after any decree or judgment of foreclosure, and whether or not enumerated in Paragraph 19 of this Mortgage, shall be added to the Secured Indebtedness secured by this Mortgage or by the judgment of foreclosure.

29.    **Interpretation**. This Mortgage shall be construed pursuant to the laws of the State of Illinois. The headings of sections and paragraphs in this Mortgage are for convenience only and shall not be construed in any way to limit or define the content, scope, or intent of the provisions. The use of singular and plural nouns, and masculine, feminine, and neuter pronouns, shall be fully interchangeable, where the context so requires. If any provision of this Mortgage, or any paragraph, sentence, clause, phrase or word, or the application thereof, in any circumstances, is adjudicated to be invalid, the validity of the remainder of this Mortgage shall be construed as if such invalid part were never included. Time is of the essence of the payment and performance of this Mortgage.

30.    **Waiver of Right of Redemption**. To the full extent permitted by law, Mortgagor hereby covenants and agrees that it will not at any time insist upon or plead, or in any manner whatsoever claim or take any advantage of, any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force, nor claim, take or insist upon any benefit or advantage of or from any law now or hereafter in force providing for the valuation or appraisement of the Property, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to any decree, judgment or order of any court of competent jurisdiction; or after such sale or sales claim or exercise any rights under any statute now or hereafter in force to redeem the property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof. To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights of redemption, on its own behalf, on behalf of all persons claiming or having an interest (direct or indirect) by, through or under Mortgagor and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date hereof, it being the intent hereof that any and all such right of redemption of

Mortgagor, and of all other persons, are and shall be deemed to be hereby waived to the full extent permitted by applicable law.  To the full extent permitted by law, Mortgagor agrees that it will not, by involving or utilizing any applicable law or laws or otherwise, hinder, delay or impede the exercise of any right, power or remedy herein or otherwise granted or delegated to Lender, but will suffer and permit the exercise of every such right, power and remedy as though no such law or laws have been or will have been made or enacted.  To the full extent permitted by law, Mortgagor hereby agrees that no action for the enforcement of the lien or any provision hereof shall be subject to any defense which would not be good and valid in an action at law upon the Note.

31.   **WAIVER OF JURY TRIAL**.  MORTGAGOR AND LENDER WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (i) UNDER THIS MORTGAGE, THE OTHER LOAN DOCUMENTS OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH; OR (ii) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS MORTGAGE OR THE OTHER LOAN DOCUMENTS.  MORTGAGOR AND LENDER AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

**[SIGNATURE APPEARS ON FOLLOWING PAGE]**

6466647_2

**IN WITNESS WHEREOF**, Mortgagor has executed this Mortgage as of the date first above written.

MORTGAGOR:

**NORTHRIDGE STORAGE, INC.,** an Illinois corporation

By:_____

Name:_____

Its:   _____

6466647_2

STATE OF ILLINOIS    )
                                ) SS.
COUNTY OF COOK    )

       I, _____, a notary public in and for said County, in the State aforesaid, **DO HEREBY CERTIFY** that _____, the _____ of Northridge Storage, Inc., personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered said instrument as his free and voluntary act and as the free and voluntary act of said company, for the uses and purposes therein set forth.

       **GIVEN** under my hand and seal, this ___ day of _____, 2016.


_____
Notary Public

6466647_2

## EXHIBIT "A"

## LEGAL DESCRIPTION

UNIT NO. 9239 IN D&S COMMERCIAL CONDOMINIUM ASSOCIATION NO. 1 AS
DELINEATED ON THE PLAT OF SURVEY OF THE FOLLOWING DESCRIBED PARCEL
OF REAL ESTATE: LOTS 4 THROUGH 8 IN D&S COMMERCIAL PHASE 2, BEING A
SUBDIVISION OF PART OF THE NORTHWEST QUARTER OF SECTION 22, TOWNSHIP
43 NORTH, RANGE 8, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO
THE PLAT THEREOF RECORDED OCTOBER 6,1994 AS DOCUMENT NO. 94R057985, IN
MCHENRY COUNTY, ILLINOIS, WHICH SURVEY IS ATTACHED AS EXHIBIT "B" TO
THE DECLARATION OF CONDOMINIUM OWNERSHIP RECORDED NOVEMBER 15,
1996 AS DOCUMENT NO. 96R058524 AND AMENDMENT RECORDED NOVEMBER 20,
1996 AS DOCUMENT NO. 95R059235, AS AMENDED FROM TIME TO TIME,
TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON
ELEMENTS, ALL IN MCHENRY COUNTY, ILLINOIS.

**PIN:   19-22-127-028**

**ADDRESS:    9239 South Route 31, Lake in the Hills, Illinois**

6466647_2

## EXHIBIT "B"

## PERMITTED ENCUMBRANCES

1.      General real estate taxes not yet due and payable.

(North Ridge Storage)

**THIS INSTRUMENT PREPARED
BY AND RETURN TO:**

Much Shelist, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Attn: Harold S. Dembo, Esq.

## MORTGAGE, ASSIGNMENT OF LEASES
## AND RENTS, AND SECURITY AGREEMENT

    **THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT** is made as of the ___ day of March, 2016, between **NORTHRIDGE STORAGE, INC.**, an Illinois corporation with a mailing address of 44 N. Virginia, Suite A, Crystal Lake, IL 60014 (hereinafter referred to as "Mortgagor") and **MUCH SHELIST, P.C.,** an Illinois profession corporation, having its principal office at 191 North Wacker Drive, Suite 1800, Chicago, Illinois 60606 ("Lender").

    **WHEREAS,** Mortgagor and Chardon, LLC,, Chardon II, LLC, Intervest, LLC, The Rink of Crystal Lake, Inc., Wolf Business Center, Inc., Wolf Family Partnership, LLC, Wolf Investments, Inc. (collectively "Co-Borrower") are indebted to Lender in the principal sum of **ONE HUNDRED EIGHTY TWO THOUSAND SEVEN HUNDRED AND NINETY and 00/100 DOLLARS ($182,879.00)**, which indebtedness is evidenced by that certain Promissory Note of even date herewith, wherein Mortgagor and Co-Borrower promise to pay to the order of Lender the maximum principal amount of **ONE HUNDRED EIGHTY TWO THOUSAND SEVEN HUNDRED AND NINETY and 00/100 DOLLARS ($182,879.00)** ("Note") providing for repayment of principal and interest with interest being paid at a fixed rate and providing for a final payment of all sums due thereunder on **March 1, 2021**.

    **TO SECURE** to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all charges provided herein and all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements contained herein and in the Note, all future advances and all other indebtedness of Mortgagor to Lender whether now or hereafter existing (collectively, the "Secured Indebtedness") and also in consideration of Ten Dollars ($10.00), the receipt and sufficiency whereof is acknowledged, Mortgagor does hereby convey, grant, mortgage and warrant to Lender the real estate ("Real Estate") located in the County of McHenry, State of Illinois and described on Exhibit "A" attached hereto;

    **TOGETHER WITH** all buildings, structures, improvements, tenements, fixtures, easements, mineral, oil and gas rights, water rights, appurtenances thereunto belonging, title or reversion in any parcels, strips, streets and alleys adjoining the Real Estate, any land or vaults lying within any street, thoroughfare, or alley adjoining the Real Estate, and any privileges, licenses, and

franchises pertaining thereunto, all of the foregoing now or hereafter acquired, all leasehold estates and all rents, issues, and profits thereof, for so long and during all such times as Mortgagor, its successors and assigns may be entitled thereto, all the estate, interest, right, title or other claim or demand which Mortgagor now has or may hereafter have or acquire with respect to (i): proceeds of insurance in effect with respect to the Property (as hereinafter defined) and (ii) any and all awards, claims for damages, settlements and other compensation made for or consequent upon the taking by condemnation, eminent domain or any like proceeding, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Property, including, without limitation, any awards and compensation resulting from a change of grade of streets and awards and compensation for severance damages (collectively "Awards") (which are pledged primarily and on a parity with the Real Estate and not secondarily), and all apparatus, equipment or articles now or hereafter located thereon used to supply heat, gas, air conditioning, water, light, power, refrigeration (whether single units or centrally controlled), and ventilation, and any other apparatus, equipment or articles used or useful in the operation of the property including all additions, substitutions and replacements thereof. All of the foregoing are declared to be a part of the Real Estate whether physically attached or not, and it is agreed that all similar apparatus, equipment, articles and fixtures hereafter placed on the Real Estate by Mortgagor or its successors or assigns shall be considered as constituting part of the Real Estate. (All of the foregoing, together with the Real Estate (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property").

To have and to hold the Property unto the Lender, its successors and assigns forever, for the purposes and uses set forth herein, free from all rights and benefits under any Homestead Exemption laws of the state in which the Property is located, which rights and benefits Mortgagor does hereby expressly release and waive.

Mortgagor and Lender covenant and agree as follows:

1.      **Payment of Principal and Interest**. Mortgagor shall promptly pay or cause to be paid when due all Secured Indebtedness.

2.      **Taxes and Assessments**. Mortgagor shall pay or cause to be paid when due all real estate taxes and assessments attributable to the Property. Mortgagor shall provide evidence reasonably satisfactory to Lender of compliance with these requirements if requested by Lender.

3.      **Application of Payments**. Unless prohibited by applicable law, all payments received by Lender under this Mortgage, the Note and all other documents given to Lender to further evidence, secure or guarantee the Secured Indebtedness (collectively, the "Loan Documents") shall be applied by Lender first to payments required from Mortgagor to Lender under Paragraph 2, then to any sums advanced by Lender pursuant to Paragraph 8 to protect the security of this Mortgage, then to interest payable on the Note and to any prepayment premium which may be due, and then to principal payable on the Note (and if principal is due in installments, application shall be to such installments in the inverse order of their maturity).

Any applications to principal of proceeds from insurance policies, as provided in Paragraph 6, or of condemnation awards, as provided in Paragraph 10, shall not extend or postpone the due

date of any monthly installments of principal or interest, or change the amount of such installments or of the other charges or payments provided in the Note or other Loan Documents.

4.     **Prior Encumbrances; Liens**.   Mortgagor shall perform all of Mortgagor's obligations under any mortgage, deed of trust or other security agreement (collectively "Prior Encumbrances") creating a lien having priority over this Mortgage, including Mortgagor's covenants to make payments when due.  Any act or omission of Mortgagor which, with the giving of notice or the passage of time would constitute a default or event of default under any Prior Encumbrance or under any ground lease shall be an Event of Default under this Mortgage. Mortgagor shall promptly deliver to Lender all notices given or received of any defaults or events of default under any Prior Encumbrance or any ground lease.  Nothing in this Paragraph shall be deemed to permit a Prohibited Transfer as defined in Paragraph 17 hereof.

Mortgagor shall keep the Property free from mechanics' and all other liens and encumbrances, except Permitted Encumbrances and statutory liens for real estate taxes and assessments not yet due and payable.

5.     **Taxes and Assessments; Rents**.  Mortgagor shall pay or cause to be paid when due all Impositions and water, sewer and other charges, fines and Impositions attributable to the Property and leasehold payments, if any, and all other sums due under any ground lease attributable to the Property.  Mortgagor shall provide evidence satisfactory to Lender of compliance with these requirements promptly after the respective due dates for payment.  Mortgagor shall pay, in full, but under protest in the manner provided by statute, any tax or assessment Mortgagor desires to contest.

6.     **Insurance**.  Mortgagor, at its sole cost and expense, shall keep insured the Property with all-risk insurance against loss to the Property, if applicable, and general public liability insurance against death, bodily injury and property damage arising in connection with the Property. The all-risk and general public liability insurance shall name Lender as a mortgagee-loss payee and shall be in amount not less than the fair market value of the Property. The insurance shall be evidenced by certificates of insurance.

7.     **Use, Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments**.   Mortgagor shall not commit waste or permit impairment or deterioration of the Property.   Mortgagor shall not allow store, treat or dispose of hazardous material, nor permit the same to exist or be stored, treated or disposed of, from or upon the Property. Mortgagor shall promptly restore or rebuild any buildings or improvements now or hereafter on the Property which may become damaged or destroyed.  Mortgagor shall comply with all requirements of law or municipal ordinances with respect to the use, operation, and maintenance of the Property, including all environmental, health and safety laws and regulations, and shall make no material alterations in the Property, except as required by law, without the prior written consent of Lender.  If this Mortgage is on a unit in a condominium or a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.  If this Mortgage is on a ground leasehold, Mortgagor shall perform or cause to be performed all obligations of the lessee under the underlying ground lease.

6433138_3

8.     **Protection of Lender's Security**.  If Mortgagor fails to perform any of the covenants and agreements contained in this Mortgage, the Note or the other Loan Documents, or if any action or proceeding is threatened or commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon not less than thirty (30) days notice to Mortgagor, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as it deems expedient or necessary to protect Lender's interest, including: (i) making repairs; (ii) discharging Prior Encumbrances in full or part; (iii) paying, settling, or discharging tax liens, mechanics' or other liens, paying ground rents (if any); (iv) procuring insurance; and (v) renting, operating and managing the Property and paying operating costs and expenses, including management fees, of every kind and nature in connection therewith, so that the Property shall be operational and usable for its intended purposes.  Lender, in making such payments of Impositions and assessments, may do so in accordance with any bill, statement, or estimate procured from the appropriate public office without inquiry into the accuracy of same or into the validity thereof.

Any amounts disbursed by Lender pursuant to this Paragraph 8 shall be part of the Secured Indebtedness and shall bear interest at the default interest rate provided in the Note (the "Default Rate").  Nothing contained in this Paragraph 8 shall require Lender to incur any expense or take any action hereunder, and inaction by Lender shall never be considered a waiver of any right accruing to Lender on account of this Paragraph 8.

9.     **Inspection of Property and Books and Records**.  Mortgagor shall permit Lender and its representatives and agents to inspect the Property from time to time during normal business hours and as frequently as Lender requests.  Mortgagor shall keep and maintain full and correct books and records showing in detail the income and expenses of the Property.  From time to time upon not less than five (5) days' demand, Mortgagor shall permit Lender or its agents to examine and copy such books and records and all supporting vouchers and data at its offices or at the address identified above.

10.     **Condemnation**.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid directly to Lender. Mortgagor hereby grants a security interest to Lender in and to such proceeds.  Lender is authorized to collect such proceeds and to apply said proceeds in payment of the Secured Indebtedness. In the event the Property is restored, Lender may pay the condemnation proceeds in accordance with its customary loan payment procedures, and may charge its customary fee for such services.  In the event the condemnation proceeds are applied to reduce the Secured Indebtedness, any such application shall constitute a prepayment, and any prepayment premium required by the Loan Documents shall then be due and payable as provided therein.  Lender may apply the condemnation proceeds to such prepayment premium.

11.     **Mortgagor Not Released; Forbearance by Lender Not a Waiver; Remedies Cumulative**.  Extension or other modification granted by Lender to any successor in interest of Mortgagor of the time for payment of all or any part of the Secured Indebtedness shall not operate to release, in any manner, the liability of the Mortgagor.  Any forbearance or inaction by Lender in

exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. Any acts performed by Lender to protect the security of this Mortgage, as authorized by Paragraph 8 or otherwise, shall not be a waiver of Lender's right to accelerate the maturity of the Secured Indebtedness. All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively. No consent or waiver by Lender to or of any breach or default by Mortgagor shall be deemed a consent or waiver to or of any other breach or default.

12.      **Successors and Assigns Bound; Joint and Several Liability; Co-signers**. The covenants and agreements contained herein shall bind, and the rights hereunder shall inure to, the respective heirs, executors, legal representatives, successors and assigns of Lender and Mortgagor. If this Mortgage is executed by more than one Mortgagor, each Mortgagor shall be jointly and severally liable hereunder.

13.      **Loan Charges**. If the Loan (as hereinafter defined) secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Mortgagor which exceeded permitted limits ("Excess Loan Charges") will, at Lender's option, either be refunded to Mortgagor or applied as a credit against the then outstanding principal balance or accrued and unpaid interest thereon. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note. Neither Mortgagor nor any other guarantor or obligor of the Note shall have any action against Lender for any damages whatsoever arising from the payment of Excess Loan Charges.

14.      **Legislation Affecting Lenders' Rights**. If an enactment, modification or expiration of an applicable governmental law, ruling or regulation has the effect of rendering any provision of the Note, this Mortgage or any of the other Loan Documents unenforceable according to its terms, Lender, at its option upon giving written notice to Mortgagor allowing Mortgagor sixty (60) days to pay off the balance of the Loan, may require immediate payment in full of all sums secured by this Mortgage and may invoke any remedies permitted by Paragraph 19.

15.      **Notice**. Except for any notice required under applicable law to be given in another manner, any notices required or given under this Mortgage shall be given by hand delivery, by nationally recognized overnight courier service or by certified mail, return receipt requested. Notices to Mortgagor are to be directed to the attention of Donald Wolf, Jr., 44 N. Virginia, Suite A, Crystal Lake, IL 60014. Notices to Lender are to be directed to the attention of Steven Schwartz, Esq., Much Shelist, P.C., 191 North Wacker Drive, Suite 1800, Chicago, Illinois 60606. Notices shall be deemed to have been given and effective on the date of delivery if hand-delivered, the next business day after delivery to the nationally recognized overnight courier service if by such courier service, or two (2) business days after the date of mailing shown on the certified receipt, if mailed. Any party hereto may change the address to which notices are given by notice as provided herein.

6433138_3

16.    **Governing Law; Severability**.  The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located.  The foregoing sentence shall not limit the applicability of Federal law to this Mortgage.  In the event that any provision or clause of this Mortgage, the Note or any of the other Loan Documents conflicts with applicable law, or is adjudicated to be invalid or unenforceable same shall not affect other provisions of this Mortgage, the Note or any of the other Loan Documents which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage, the Note or any of the other Loan Documents are declared to be severable and the validity or enforceability of the remainder of the Loan Document in question shall be construed without reference to the conflicting, invalid or unenforceable clause or provision.

17.    **Prohibitions on Transfer of the Property or of an Interest in Mortgagor**.  It shall be an immediate default if, without the prior written consent of Lender, which consent shall not be unreasonably withheld, Mortgagor shall create, effect or consent to or shall suffer or permit any conveyance, sale (including an installment sale), assignment, transfer, lien, pledge, hypothecate, mortgage, security interest, or other encumbrance or alienation, whether by operation of law, voluntarily or otherwise, (collectively "Transfer") of the Property or any part thereof or interest therein, (each of the foregoing is referred to as a "Prohibited Transfer").  In the event of such default, Lender may declare the entire unpaid balance, including interest, immediately due and payable.  The foregoing provisions of this Paragraph 17 shall not, however, apply to the lien of current Impositions and assessments not yet due and payable or to the lien of any current or future senior loan and senior mortgage.  This option shall not be exercised by Lender if prohibited by Federal law as of the date of this Mortgage.

18.    **Event of Default**.  Each of the following shall constitute an event of default ("Event of Default") under this Mortgage:

(a)    Mortgagor's failure to pay any installment of principal or interest when due and payable, whether at maturity or by acceleration or otherwise under the Note, this Mortgage, or any other Loan Document, or Mortgagor's failure to pay any other amount required under the Note, this Mortgage or any other Loan Document;

(b)    Mortgagor's failure to perform or observe any other covenant, agreement, representation, warranty or other provision contained in the Note, this Mortgage (other than an Event of Default described elsewhere in this Paragraph 18) or any other document or instrument evidencing, guarantying or securing the Secured Indebtedness, and such failure continues for more than thirty (30) days after the earlier of Mortgagor becoming aware of such failure and notice thereof given by Lender to Mortgagor; provided, however, that if such Event of Default is not capable of being cured within said thirty (30) days, Mortgagor commences to cure such Event of Default within said thirty (30) days and thereafter Mortgagor diligently prosecutes the cure of such Event of Default, Mortgagor shall have such additional time as is reasonably necessary, not to exceed sixty (60) days, to cure such Event of Default; provided, however, that such cure period shall not apply to the other subparagraphs of this Paragraph 18;

6433138_3

(c)   the occurrence of any material breach of any representation or warranty contained in this Mortgage or any other Loan Document;

(d)   the occurrence of a Prohibited Transfer;

(e)   the entry by a court having jurisdiction of a decree or order for relief in respect of Mortgagor in any involuntary case brought under any bankruptcy, insolvency, debtor relief, or similar law; or if Mortgagor, or any person in control of Mortgagor, shall: (i) file a voluntary petition in bankruptcy, insolvency, debtor relief or for arrangement, reorganization or other relief under the Federal Bankruptcy Act or any similar state or federal law; (ii) consent to or suffer the appointment of or taking possession by a receiver, liquidator, or trustee (or similar official) of the Mortgagor or for any part of the Property or any substantial part of the Mortgagor's other property; (iii) make any assignment for the benefit of Mortgagor's creditors;

(f)   all or a substantial part of Mortgagor's assets are attached, seized, subjected to a writ or distress warrant, or are levied upon;

(g)   this Mortgage shall not constitute a valid lien on and security interest in the Property (subject only to the Permitted Encumbrances), or if such lien and security interest shall not be perfected;

(j)   an indictment or other charge is filed against Mortgagor, any guarantor of or obligor under the Note in any jurisdiction, under any federal or state law, for which forfeiture of the Premises or of other collateral securing the Secured Indebtedness is determined by Lender in its reasonable discretion, to be a potential penalty unless such charge is dismissed within sixty (60) days after filing; or

(k)   a default shall occur under that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated even date herewith made by Co-Borrower in favor of Lender.

19.   **ACCELERATION; REMEDIES**.  AT ANY TIME AFTER AN EVENT OF DEFAULT, LENDER, AT LENDER'S OPTION, MAY DECLARE ALL SUMS SECURED BY THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS TO BE IMMEDIATELY DUE AND PAYABLE WITHOUT FURTHER DEMAND AND MAY FORECLOSE THIS MORTGAGE BY JUDICIAL PROCEEDING. LENDER SHALL BE ENTITLED TO COLLECT IN SUCH PROCEEDING ALL EXPENSES OF FORECLOSURE, INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES AND COSTS INCLUDING ABSTRACTS AND TITLE REPORTS, ALL OF WHICH SHALL BECOME A PART OF THE SECURED INDEBTEDNESS AND IMMEDIATELY DUE AND PAYABLE, WITH INTEREST AT THE DEFAULT RATE. THE PROCEEDS OF ANY FORECLOSURE SALE OF THE PROPERTY SHALL BE APPLIED AS FOLLOWS:  FIRST, TO ALL COSTS, EXPENSES AND FEES INCIDENT TO THE FORECLOSURE PROCEEDINGS; SECOND, AS SET FORTH IN PARAGRAPH 3 OF THIS MORTGAGE; AND THIRD, ANY BALANCE TO MORTGAGOR.

6433138_3

20.   **Assignment of Leases and Rents**.  All right, title, and interest of Mortgagor in and to those all present and future leases affecting the Property, written or oral (collectively, "Leases"), and all rents, income, receipts, revenues, issues, avails and profits from or arising out of the Property (collectively "Rents") are hereby transferred and assigned to Lender as further security for the payment of the Secured Indebtedness, and Mortgagor hereby grants a security interest to Lender in and to the same.  Each Lease shall, at the option of Lender, be paramount or subordinate to this Mortgage.

If, without Lender's prior written consent, Mortgagor;  (i) as lessor, fails to perform and fulfill any term, covenant, or provision in any Lease; (ii) suffers or permits to occur any breach or default under the provisions of any separate assignment of any Lease given as additional security for the Secured Indebtedness; or (iii) fails to fully protect, insure, preserve, and cause continued performance or fulfillment of the terms, covenants, or provisions, which are required to be performed by the lessee or the lessor of any other Lease or Leases hereafter assigned to Lender; such occurrence shall constitute an Event of Default hereunder.

Lender shall have the right to assign Mortgagor's right, title and interest in any Leases to any subsequent holder of this Mortgage or the Note and other Loan Documents or to any person acquiring title to all or any part of the Premises through foreclosure or otherwise.

Upon an Event of Default, this Mortgage shall constitute a direction to each lessee under the Leases and each guarantor thereof, if any, to pay all Rents directly to Lender, to the extent allowed by law, without proof of the Event of Default.  While this assignment is a present assignment, Lender shall not exercise any of the rights or powers conferred upon it by this paragraph until an Event of Default shall occur under this Mortgage.  In the event Lender is prohibited or precluded from collecting the Rents upon an Event of Default, Mortgagor hereby agrees to remit to Lender all Rents collected by Mortgagor following such Event of Default, which amounts shall be applied to the Secured Indebtedness or to the operation and maintenance of the Premises, in Lender's reasonable discretion.

If Mortgagor, as lessor, shall neglect or refuse to perform and keep all of the covenants and agreements contained in the Lease or Leases, then Lender may perform and comply with any such Lease covenants and agreements.  All related costs and expenses incurred by the Lender shall become a part of the Secured Indebtedness and shall be due and payable upon demand by Lender with interest thereon accruing thereafter at the Default Rate.

Lender, however, shall not be obligated to perform or discharge any obligation, duty or liability under any Lease.  Mortgagor shall, defend, protect, indemnify and hold Lender harmless from and against any and all liability, loss or damage to Lender under the Leases or under or by reason of their assignments and of and from any and all claims and demands whatsoever which may be asserted against Lender by reason of all alleged obligations or undertakings on its part to perform or discharge any Lease terms, covenants or agreements.  The amount of any such liability, loss or damage arising under the Leases or under or by reason of their assignment, or in the defense of any claims or demands, including costs, expenses and attorneys' fees, incurred by Lender shall be a part of the Secured Indebtedness due and payable upon demand with interest thereon accruing thereafter at the Default Rate.

6433138_3

21.     Intentionally Omitted.

22.     **Appointment of Receiver**.  Upon acceleration under Paragraphs 17 or 19 or abandonment of the Property, and without further notice to Mortgagor, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the Rents including those past due.  The receiver shall have the power to collect the Rents from the time of acceleration through the pendency of any foreclosure proceeding and during the full statutory period of redemption, if any.  All Rents collected by the receiver shall be applied as the appointing court may direct and, in the absence of such direction, first to payment of the costs and expenses of the management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then as provided in Paragraph 3.  The receiver shall be liable to account only for those Rents actually received.

23.     **Release**. Upon payment of all Secured Indebtedness, Lender shall release this Mortgage upon payment by Mortgagor of all costs and fees to release same, if any. Mortgagor shall be responsible for recording the release, including all related costs of recordation.

24.     **Security Agreement**.  Without limiting any other provisions of this Mortgage, this Mortgage constitutes a Security Agreement under the Uniform Commercial Code of the State of Illinois (herein called the "Code") with respect to all fixtures, apparatus, equipment or articles, and all replacements and substitutions, now or hereafter located on the Property as set forth in the description of the Property above, including but not limited to the air-conditioning, heating, gas, water, power, light, refrigeration, and ventilation systems which are presently located at the Property, and with respect to all Funds and other sums which may be deposited with Lender pursuant hereto (all for the purposes of this paragraph called "Collateral"), and Mortgagor hereby grants to Lender a security interest in such Collateral.  All of the terms, provisions, conditions and agreements contained in this Mortgage pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Property.  When the Secured Indebtedness shall become due, whether by acceleration or otherwise, Lender shall have all remedies of a secured party under the Code.  This Mortgage is intended to be a financing statement with respect to any other Collateral which constitutes "fixtures" within the meaning of the Code.  Mortgagor shall execute and deliver to Lender any financing statements necessary to perfect the security interest in the Collateral created hereby.  Any Code requirement for reasonable notice shall be met if such notice is delivered as provided herein at least five (5) days prior to the time of any sale, disposition, or other event or matter giving rise to the notice (which period of time and method of notice is agreed to be commercially reasonable).

25.     **Principal Amount of Mortgage**.  At no time shall the principal amount of the Note secured by this Mortgage, not including sums advanced for Impositions and insurance premiums or to protect the security of this Mortgage, exceed two hundred percent (200%) of the stated principal amount of the Note.

26.     **Business Loan**.  Mortgagor hereby represents and warrants that: (a) the proceeds of the Secured Indebtedness (the "Loan") will be used for the purposes specified in 815 ILCS

6433138_3

205/4(1)(a) or (c) of the Illinois Compiled Statutes, as amended; (b) the Loan constitutes a "business loan" within the purview of that Section; (c) the Loan is a transaction exempt from the Truth in Lending Act, 15 U.S.C. ' 1601, et seq.; and (d) the proceeds of the Secured Indebtedness will not be used for the purchase of registered equity securities within the purview of Regulation "U" issued by the Board of Governors of the Federal Reserve System.

27.  **Riders**.  All Riders attached hereto, if any, are incorporated herein and made a part hereof.

28.  **Compliance with Illinois Mortgage Foreclosure Law**.  If any provision in this Mortgage shall be inconsistent with any provision of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 et. seq. of the Illinois Compiled Statutes) (the "Act") the provisions of the Act shall take precedence over the Mortgage provisions, but shall not invalidate or render unenforceable any other Mortgage provision that can be construed in a manner consistent with the Act.  If any Mortgage provision shall grant to Lender any rights or remedies upon Mortgagor's default which are more limited than the rights that would otherwise be vested in Lender under the Act in the absence of such provision, Lender shall be vested with the rights granted in the Act to the full extent permitted by law.  Without limiting the generality of the foregoing, all expenses incurred by Lender to the extent reimbursable under Sections 15-1510 and 15-1512 of the Act, whether incurred before or after any decree or judgment of foreclosure, and whether or not enumerated in Paragraph 19 of this Mortgage, shall be added to the Secured Indebtedness secured by this Mortgage or by the judgment of foreclosure.

29.  **Interpretation**.  This Mortgage shall be construed pursuant to the laws of the State of Illinois.  The headings of sections and paragraphs in this Mortgage are for convenience only and shall not be construed in any way to limit or define the content, scope, or intent of the provisions.  The use of singular and plural nouns, and masculine, feminine, and neuter pronouns, shall be fully interchangeable, where the context so requires.  If any provision of this Mortgage, or any paragraph, sentence, clause, phrase or word, or the application thereof, in any circumstances, is adjudicated to be invalid, the validity of the remainder of this Mortgage shall be construed as if such invalid part were never included.  Time is of the essence of the payment and performance of this Mortgage.

30.  **Waiver of Right of Redemption**.  To the full extent permitted by law, Mortgagor hereby covenants and agrees that it will not at any time insist upon or plead, or in any manner whatsoever claim or take any advantage of, any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force, nor claim, take or insist upon any benefit or advantage of or from any law now or hereafter in force providing for the valuation or appraisement of the Property, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to any decree, judgment or order of any court of competent jurisdiction; or after such sale or sales claim or exercise any rights under any statute now or hereafter in force to redeem the property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof.  To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights of redemption, on its own behalf, on behalf of all persons claiming or having an interest (direct or indirect) by, through or under Mortgagor and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date hereof, it being the intent hereof that any and all such right of redemption of

Mortgagor, and of all other persons, are and shall be deemed to be hereby waived to the full extent permitted by applicable law.  To the full extent permitted by law, Mortgagor agrees that it will not, by involving or utilizing any applicable law or laws or otherwise, hinder, delay or impede the exercise of any right, power or remedy herein or otherwise granted or delegated to Lender, but will suffer and permit the exercise of every such right, power and remedy as though no such law or laws have been or will have been made or enacted.  To the full extent permitted by law, Mortgagor hereby agrees that no action for the enforcement of the lien or any provision hereof shall be subject to any defense which would not be good and valid in an action at law upon the Note.

31.     **WAIVER OF JURY TRIAL**.  MORTGAGOR AND LENDER WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (i) UNDER THIS MORTGAGE, THE OTHER LOAN DOCUMENTS OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH; OR (ii) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS MORTGAGE OR THE OTHER LOAN DOCUMENTS.  MORTGAGOR AND LENDER AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

**[SIGNATURE APPEARS ON FOLLOWING PAGE]**

6433138_3

**IN WITNESS WHEREOF**, Mortgagor has executed this Mortgage as of the date first above written.

MORTGAGOR:

**NORTHRIDGE STORAGE, INC.,** an Illinois corporation

By:_____

Name:_____

Its:    _____

6433138_3

STATE OF ILLINOIS     )
                      ) SS.
COUNTY OF COOK        )


     I, _____, a notary public in and for said County, in the State aforesaid, **DO HEREBY CERTIFY** that _____, the _____ of Northridge Storage, Inc., personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered said instrument as his free and voluntary act and as the free and voluntary act of said company, for the uses and purposes therein set forth.

     **GIVEN** under my hand and seal, this ___ day of _____, 2016.


_____
Notary Public


6433138_3

## EXHIBIT "A"

## LEGAL DESCRIPTION

UNIT NO. 9239 IN D&S COMMERCIAL CONDOMINIUM ASSOCIATION NO. 1 AS
DELINEATED ON THE PLAT OF SURVEY OF THE FOLLOWING DESCRIBED PARCEL
OF REAL ESTATE: LOTS 4 THROUGH 8 IN D&S COMMERCIAL PHASE 2, BEING A
SUBDIVISION OF PART OF THE NORTHWEST QUARTER OF SECTION 22, TOWNSHIP
43 NORTH, RANGE 8, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO
THE PLAT THEREOF RECORDED OCTOBER 6,1994 AS DOCUMENT NO. 94R057985, IN
MCHENRY COUNTY, ILLINOIS, WHICH SURVEY IS ATTACHED AS EXHIBIT "B" TO
THE DECLARATION OF CONDOMINIUM OWNERSHIP RECORDED NOVEMBER 15,
1996 AS DOCUMENT NO. 96R058524 AND AMENDMENT RECORDED NOVEMBER 20,
1996 AS DOCUMENT NO. 95R059235, AS AMENDED FROM TIME TO TIME,
TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON
ELEMENTS, ALL IN MCHENRY COUNTY, ILLINOIS.

**PIN:   19-22-127-028**

**ADDRESS:   9239 South Route 31, Lake in the Hills, Illinois**

6433138_3

## EXHIBIT "B"

### PERMITTED ENCUMBRANCES

1.      General real estate taxes not yet due and payable.